IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DENISE SHACKLEFORD, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 19-cv-00954 |
| VIVINT SOLAR, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This case arises out of Denise Shackleford's ("Plaintiff") suit against Vivint Solar Developer LLC ("Defendant" or "Vivint") under the Fair Credit Report Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, wherein she alleges that a Vivint field salesperson obtained her consumer credit report under false pretenses. (ECF No. 1). This case has been referred to me for resolution of all discovery matters pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 24). Now pending before the Court is Plaintiff's Motion to Compel Answers to Interrogatories and Requests for Production. (ECF No. 19-1). Defendant has filed an Opposition, and Plaintiff submitted a Reply. (ECF Nos. 19-2 & 19-3). In the interim, Plaintiff raised an additional discovery issue with the Court (ECF No. 23) to which Defendant has now responded (ECF No. 27). To be efficient, the Court considers this new discovery issue as part of the already-pending Motion to Compel, and will address all open issues in this Opinion and accompanying Order. The Court finds that no hearing is necessary. Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Plaintiff's Motion to Compel is GRANTED in PART and DENIED in PART.

I.   BACKGROUND

According to her Complaint, on September 5, 2018, Plaintiff opened the door to her home and was met by Brett Sears, an employee of Defendant Vivint, who stated that he was there on behalf of her energy provider, Baltimore Gas & Electric. (ECF No. 1 ¶¶ 7, 9, 10). The salesman then pitched Plaintiff on a grand opportunity: the State would provide her with solar panels and do so on a "100% free" basis. *Id.* ¶ 10. The exchange that follows sets the scene for the underlying suit.

Mr. Sears allegedly told Plaintiff that he wanted "to do a survey to see if he could tell her how much money she could save on electricity." (ECF No. 19-1 at 5). Although Plaintiff said she was not interested, the salesman continued and "adding pressure," asked Plaintiff to sign a digital box on an electronic tablet to "see if she was financially stable enough." (ECF No. 1 ¶¶ 19–20).[1] Plaintiff "recoiled," and refused to sign anything that would allow access to her credit report, but Mr. Sears assured her that he would "not be pulling [her] credit," but rather she needed to sign merely to verify that the representative was at her home." *Id.* ¶ 22. Based on this salesman's "fraudulent misrepresentation," Plaintiff signed in the signature box.

A few days later, "to her shock, worry, and anger," Plaintiff received a notification that Vivint had made a hard inquiry on her consumer credit report. *Id.* ¶ 26. Plaintiff then filed a complaint with the Better Business Bureau. *Id.* ¶ 27. Specifically, Plaintiff charged that Defendant Vivint has a pattern and practice wherein it regularly obtains consumer reports without a permissible purpose and/or under false pretenses. *Id.* ¶ 37–43.

---

[1] It is unclear as to whether Plaintiff acknowledges that she was told she was signing for purposes of considering her financial ability, or simply to ascertain that the salesperson was there.

On March 29, 2019, Plaintiff commenced the instant lawsuit against Defendant Vivint for Mr. Sears' actions in violating the Fair Credit Reporting Act. Plaintiff alleges both negligent and willful violations of the Act based on Mr. Sears' alleged conduct. Plaintiff claims unspecified actual damages, emotional distress damages, statutory damages up to $1,000, punitive damages, and attorney's fees. Although Defendant asserts that it had Plaintiff's consent to pull the credit report, and otherwise denies liability, it did contact all three consumer credit reporting agencies approximately thirty days after the encounter to remove the credit inquiry. (ECF No. 19-2 at 1).

On July 11, 2019, Plaintiff served her first set of Interrogatories and Requests for Production on Defendant. (ECF No. 19-1 at 6). Defendant provided its written responses and objections on August 27, 2019. After conferring, the parties were unable to resolve all the issues outlined in Plaintiff's Reply, and accordingly Plaintiff filed the instant motion to Compel on November 6, 2019. *Id.*

On January 14, 2020, Plaintiff wrote to this Court and requested a telephonic conference to discuss the impending discovery deadline. (ECF No. 23). Plaintiff explained that she had deposed Defendant on January 8, 2020, however Vivint refused to "answer any questions related to those issues subsumed within the pending Motion to Compel." *Id.* at 1. In addition, Plaintiff advised the Court of a new discovery dispute, wherein Defendant objected to Plaintiff's request for physical inspection of an iPad device.[2] *Id.* In light of the pending discovery issues, Judge Hollander referred this case to for me resolution of the Motion (ECF No. 19), the Rule 34 issue highlighted in Plaintiff's recent filing (ECF No. 23), and any other discovery-related matters.

---

[2] After discussion with Counsel, they were instructed to utilize Judge Coulson's informal discovery procedure in briefing this issue. Defendant took the opportunity to respond (ECF No. 27), and Plaintiff declined to do so, and indicated to the Court that they felt that the information previously provided was sufficient.

II. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The 2015 Amendments to Rule 26 emphasize that to fall within the scope of permissible discovery, the information sought must be both relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The burden is on the party resisting discovery to establish that the documents are not relevant. *Desrosiers v. MAG Indus. Automation Sys., LLC*, 675 F. Supp. 2d 598, 601 (D. Md. 2009).

The crux of the current dispute is whether the scope of discovery extends to matters beyond Plaintiff's interaction with Mr. Sears to include other complaints and/or the conduct of other employees of Defendant. Plaintiff argues a broad scope of discovery is justified to establish willfulness—*i.e.*, if such conduct is widespread and known to Defendant, it makes it more likely that Mr. Sear's conduct towards Plaintiff was part of this pattern and practice and, therefore, willful. Defendant argues that the discovery sought is not relevant to establishing a violation by Mr. Sears. Further, Defendant asserts in general terms that the discovery sought is disproportional, burdensome, and potentially invades the attorney-client privilege and work product doctrine.

As set forth below, the Court takes a middle ground. On the one hand, the types of materials sought—past complaints, training materials, policies and procedures—could very well establish willfulness. On the other hand, given that only a single interaction between Mr. Sears and Plaintiff form the basis of the alleged violation, it is the willfulness of Mr. Sears' conduct that

4

is at issue. Thus, the materials sought should be limited to those that relate to Mr. Sears at the time of his interaction with Plaintiff.[3] Plaintiff's specific requests are addressed below.

III. ANALYSIS

In her motion, Plaintiff seeks compelled responses from Defendant to Interrogatory Numbers 12, 13, 14, as well as her Request for Production Numbers 11, 12, 14, 18, 19, 20, 21. These discovery requests can be generally grouped into the following five categories: (1) prior complaints; (2) other prospective customer consent forms; (3) training videos; (4) identification of Defendant's employees who worked or solicited customers in the same areas Plaintiff; and (5) policies, procedures, manuals, and other similar documents bearing on the requirements of the FCRA. (ECF No. 19-3 at 3–7). The Court will address those categories in turn, followed by Vivint's request for a protective order and an award of reasonable expenses incurred in connection with Motion.

**A. Similar Complaints**

Plaintiff first seeks the identification and production of complaints received by Vivint in cases alleging that Vivint obtained a consumer report without a "permissible purpose." (ECF No. 19-1 at 6). Particularly, Request for Production Number 20 and Interrogatory Number 13 state:

> **Request for Production No. 20:** Any complaints (formal or informal, civil, regulatory or administrative) served upon you that involved cases where there were allegations that you obtained a consumer report without a 'permissible purpose' as required under § 1681b of the FCRA.
>
> **Interrogatory No. 13:** Identify all complaints received by you relating to obtaining a consumer report or accessing a person's consumer file without having a permissible purpose as described under § 1681b of the FRCA . . . .

---

[3] Because Defendant's objections of burden, proportionality and attorney-client are vague and unsupported by specifics, the Court is not relying on those objections in its decision here. When, as here, these objections are asserted generically, the Court rejects them as inconsistent with specific provisions and the overall goals of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B). The Rules require the grounds for objecting to an interrogatory "be stated with specificity." *Id.* Of course, the Court, like the parties, has its own responsibility pursuant to Rule 1 of the Federal Rules of Civil Procedure to employ these rules in a manner consistent with the just, speedy and efficient resolution of cases.

*Id.* at 6–7.

In her Reply, Plaintiff further limits her request to "the complaints themselves, as well as documents where the complaints have been recorded, which should include—at the very least— the complaint tracker," a device described by Defendant's witnesses as an Excel spreadsheet used to keep track of trending complaints. (ECF No. 19-3 at 5).

Complaints regarding the conduct of other employees are not relevant to whether Mr. Sears conducted an unauthorized credit report pull during his September 8, 2018 interaction with Plaintiff. Although Plaintiff has directed the Court to other decisions either allowing for or citing the need for "other similar incidents" to show willfulness, in the main those cases dealt with challenged corporate processes, not the particular behavior of an identified employee in the field on a given occasion. That said, Defendant will produce any such complaints citing Mr. Sears' conduct.

### B. Prospective Consent Forms from Plaintiff's Zip Code

Next, Plaintiff seeks "any and all 'prospective consumer consent forms' obtained by Vivint representatives, employees, or agents in Ms. Shackleford's zip code in September 2018." (ECF No. 19-1 at 9). Plaintiff contends that these forms pertain to whether Plaintiff had her consumer report pulled without her knowledge, and this evidence would indicate a pattern of similar wrongdoing, which is relevant to the willfulness inquiry in an "individual impermissible credit pull case under the FCRA." *Id.* at 10. Plaintiff further asserts that the form had some information pre-printed on it, including a date of birth proximate to her own date of birth. Plaintiff surmises that Defendant instructs its sales force to gather such information from public records to facilitate its unauthorized credit report pulls.

Defendant argues that this information is irrelevant as the "willfulness" requirement in an alleged § 1681b violation centers only on the actual credit inquiry at issue, as opposed to that in other complaints. (ECF No. 19-2 at 3). Specifically, when plaintiff alleges a willful violation, the trier of fact determines willfulness by examining the transaction at issue, and any prior dealings between the parties involved.

The Court largely agrees with Defendant. First, the request is not limited to forms that led to complaints. Second, if the forms did lead to complaints, those forms not completed by Mr. Sears do not make it anymore or less likely that his interaction with Plaintiff was wrongful. As for the allegation of already-completed forms, it is not directly apparent how such conduct would facilitate wrongfully obtaining Plaintiff's signature or an unauthorized credit report request. Moreover, producing the forms of other customers would necessarily entail an analysis of the circumstances of their interactions with Defendant's salesforce and also potentially put their personally-identifiable information under scrutiny in litigation where they are not parties. To the extent such activity was a recurring part of Mr. Sears' activity, that should be reflected in complaints against him, which the Court has already ordered produced. Therefore, the Court will not order production of other customers' forms involving other salespeople. If, however, there are complaints against Mr. Sears regarding unauthorized credit report pulls, Defendant will produce the form(s) related to such complaints.

C. **Training Videos**

Plaintiff also seeks Vivint's videos used to train salespersons on the requirements of the Fair Credit Reporting Act and on "sales ethics." (ECF No. 19-1 at 10). With an eye toward compromise, Defendant produced the training courses that Mr. Sears has taken with Vivint, including FCRA-related courses (subject to a confidentiality exception). (ECF No. 19 at 2). This

7

production did not satisfy Plaintiff, who contends those videos "*not* viewed by Sears can be equally important as those he viewed, particularly if there are ethics videos bearing on the subjects at issue in this case that he did not view." *Id.*

"Sales Ethics" is an undefined term that could encompass matters well beyond the FCRA provision at issue. However, the Court will compel the production of training videos addressing FCRA compliance with respect to credit report pulls that were either: viewed by Mr. Sears, or available to him at the time of his training and until the time of his interaction with Plaintiff.

### D. Identification of Defendant's Employees

Plaintiff next seeks the identity, and a photograph, of supervisors and other salespersons who solicited work in the area. Plaintiff justifies this request on the chance that other personnel may contradict Mr. Sears' testimony regarding his training, instruction and behavior. Defendant provided the names of the District Managers to whom Mr. Sears reported: Jacob Cook and Alejandro Agudelo. Further, Vivint produced Sears' personnel file and photograph, and those of Cook, and Agudelo. (ECF No. 19-2 at 10). This is a sufficient response at this juncture. The mere possibility that other employees might contradict Mr. Sears or his managers, without more, does not justify ordering a more expansive answer. If discovery uncovers information that would specifically call into question the veracity of such testimony, the Court might reconsider a narrowed version of this request to include one or more of Mr. Sears' immediate co-workers at the time of his interaction with Plaintiff.

### E. Policies, Procedures, Manuals and Other Similar Documents Regarding FCRA Requirements

Finally, Plaintiff requests manuals, memoranda, bulletins, or other documents bearing on the FCRA's "permissible purpose" obligation regarding pulling credit reports.[4] In an apparent concession, Defendant agreed to the produce portions of Vivint's Residential Customer operations manual that relate to credit reporting and were in effect when Mr. Sears visited Plaintiff's residence. (ECF No. 19-1 at 14). It is not clear to the Court whether this manual comprises all of the applicable policies and procedures relating to obtaining credit reports that would have governed Mr. Sears' conduct at the time of his interaction with Plaintiff. If so, then Defendant's response is sufficient. If, however, there are other policies and procedures outside the manual that nonetheless apply to Mr. Sears' conduct with respect to obtaining credit reports at the time of his interaction with Plaintiff, those too should be produced.

## IV. PHYSICAL INSPECTION OF iPAD

On December 19, 2019, Plaintiff served a Rule 34 Inspection Notice on Defendant. (ECF No. 2 at 2). The subject of this Notice was for Plaintiff to inspect an iPad on which one can access Vivint Solar credit consent form ("CCF") version 4.0 (*i.e.*, the version in use at the time of Mr. Sears' interaction with Plaintiff). *Id.* Plaintiff premises this request on Defendant's claim that it utilized this version of the software to obtain Plaintiff's consent and because the facts are in dispute as to what if anything Plaintiff saw when presented with the iPad that day by Mr. Sears. *Id.* Specifically, Plaintiff testified that she saw only a blank signature line, while Vivint's salesman

---

[4] Request for Production Number 19 seeks "any manuals, memoranda, bulletins or other documents" instructing Defendant's employees as to, agents, or representatives as to the requirements of § 1681b. (ECF No. 19-2 at 11). Finally, Interrogatory Number 12 asks Defendant to identify "any and all" policies and procedures in effect from 2012 to present designed to ensure that Defendant employees do not obtain credit reports without a permissible purpose. *Id.*

testified that the iPad presents a disclaimer stating that the consumer is consenting to a credit pull. *Id.* Accordingly, there is a factual dispute as to what (1) what is visible on the iPad utilizing CCF version 4.0; and (2) whether the iPad had the capability to zoom in, thus making only the signature line available to view. *Id.* Plaintiff further urges that Vivint must produce the iPad with version 4.0 or be precluded in this case from arguing that version 4.0: (1) contains a disclaimer, and (2) cannot be zoomed-in upon to reflect only a signature line. (ECF No. 23 at 2).

Defendant objects to this request, arguing: (1) it neither possesses an iPad with version 4.0, nor could it reasonably re-create one without risking disruption of its business; and (2) there is no meaningful difference between versions 4.0 and 4.1 with respect to customer consent. (ECF No. 27). Initially, this position was supported by the testimony of Defendant's corporate designee, Erin Pack, who, after talking to Defendant's IT personnel, testified to her understanding that version 4.0 included a disclaimer, and did not permit anyone to zoom in. Plaintiff challenged this testimony as lacking an adequate foundation to fully resolve the issue. (ECF No. 23 at 2).

As a threshold matter, whether the differences between version 4.0 and 4.1 are material, relative to Plaintiff's experience of the consent process as it then existed, are clearly a legitimate area of inquiry. Evaluating a motion to compel, however, ultimately turns on the adequacy of Defendant's response to that inquiry. As noted above, at her deposition, Defendant's corporate designee provided her understanding that there were no meaningful differences between the two versions and that neither allowed an iPad user to "zoom in" so as to obscure the consent language. This was based, at least in part, on information provided to her from Defendant's IT personnel. By itself, it may have justified some additional discovery. However, in Defendant's recent response, Defendant has now included a declaration from Aaron Crosby, Defendant's IT Program

manager, who sets forth firsthand knowledge that, in the Court's view, adequately answers the inquiry. (ECF No. 27-1).

Mr. Crosby details the "user-facing" changes between the two versions and verifies that the consent language is the same. He confirms that neither version provides the opportunity to obscure that consent language by zooming in on the signature box. *Id*. ¶ 18. In fact, he clarifies that the only changes between versions 4.0 and 4.1 were: (1) adding the title "Credit Qualification Form" to the top of the form; (2) adding a space to input the last four digits of the customer's social security number; (3) and adding a date field that automatically populates when the customer signs the electronic form with a finger or stylus. *Id*. ¶ 29. In addition to verifying that no change in the consent process occurred between versions 4.0 and 4.1, Mr. Crosby clarifies that version 4.0 was deleted from Defendant's document library in April of 2019 when version 4.1 went into effect. *Id*. ¶ 23. Mr. Crosby indicates that there is no reasonable ability to re-create version 4.0 on an iPad without risking disruption to its business operations. *Id*. ¶¶ 25–27.

Mr. Crosby's affidavit supports the Defendant's corporate designee's earlier-expressed understanding, which in turns removes the risk that something may have been misunderstood by the designee. In the Court's view, therefore, Defendant's response adequately responds to the inquiry. Plaintiff, of course, remains free to argue that Mr. Sears did something to mislead her or to obscure the consent language (*e.g*., block it with his hand), and may even argue that, notwithstanding Mr. Crosby's information, Mr. Sears had some other version of the software or had somehow manipulated its functionality so as to allow him to zoom in on just the signature box. Nonetheless, Defendant will not be required to disrupt its business operations by reintroducing old software in an attempt to recreate version 4.0 on an iPad it does not now possess.

As to the admissibility or significance, if any, at trial of the unavailability of version 4.0 other than in paper form, that is a matter left to the sound discretion of the trial judge.

In light of the above rulings, the parties should confer and jointly propose a reasonable modification to the current schedule so as to accommodate this additional discovery.

V.  PROTECTIVE ORDER & REASONABLE EXPENSES

Defendant also requests this Court issue a protective order which would bar Plaintiff from conducting further discovery into past complaints and would "prevent Plaintiff from seeking objectionable information through other means—for example, through depositions or through document subpoenas to third parties." (ECF No. 19-2 at 12). Defendant also requests that this Court order attorney's fees, as Plaintiff lacked a substantial justification to file a motion to compel.

### A. Protective Order

Trial courts enjoy broad discretion in deciding "when a protective order is appropriate and what degree of protection is required." *Furlow v. United States*, 55 F. Supp. 2d 360, 366 (D. Md. 1999). Rule 26(c)(1) permits courts to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1). Where a protective order is sought, the moving party bears the burden of establishing good cause. *CX Reinsurance Co. Ltd. v. City Homes, Inc.*, 2018 WL 5080944 (D. Md. Oct. 18, 2018) (citing *Webb v. Green Tree Serv., LLC*, 283 F.R.D. 276, 278 (D. Md. 2012)). This burden requires more than "stereotyped and conclusory statements," but rather the "movant must present a 'particular and specific demonstration of fact' as to why a protective order should issue." *Webb*, 283 F.R.D. at 279 (quoting *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006)). Despite the broad discretion conferred on trial courts to decide when a protective order is

appropriate, and what degree of protection is required, the standard for issuance of a protective order is high. *CX*, 2018 WL 5080944, at *3.[5]

In the instant opinion, the Court has defined the scope of relevant information for purposes of discovery. The Court trusts that the parties will abide by that ruling in conducting discovery in this case by whatever means are utilized under the Federal Rules. Accordingly, no separate protective order is required.

### B. Attorney's Fees

With respect to Defendant's request for attorney's fees in association with its motion to compel, Rule 37(a)(5)(A) states, relevantly:

> If the motion [to compel discovery] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Under the rule, if the motion to compel is granted, an award of costs and attorney's fees is mandatory, unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). A party satisfies the "substantially justified" standard "if there is a 'genuine dispute' as to proper resolution or if 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Decision Insights, Inc. v. Sentia Grp., Inc.*, 311 Fed. App'x 586, 599 (4th Cir. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565–66 n.2 (1988)).

---

[5] *See also American Medical Sys.*, 2016 WL 4411506, at *3 (S.D.W.Va. Aug. 17, 2016) ("[A] court's customary reluctance to constrain discovery is heightened in the case of a motion seeking to prevent the taking of a deposition.").

Plaintiff's Motion to Compel, and Defendant's opposition thereto, certainly evidence a "genuine dispute" as to the propriety of this request to compel, and the caselaw cited in the parties' briefing, and by this Court, certainly constitutes a "reasonable basis in law and fact" for each party's position on the matter. *See Kemp v. Harris*, 263 F.R.D. 293, 296–97 (D. Md. 2009) ("Courts have concluded that 'substantial justification' could include making meritorious objections to requested discovery, or even engaging in a legitimate dispute over the sequence of discovery."). Accordingly, Defendant's request for attorney's fees in contesting this motion to compel is DENIED.

VI. CONCLUSION

For the reasons outlined above, Plaintiff's Motion to Compel (ECF No. 19-1) is GRANTED in Part and DENIED in Part; and Plaintiff's Rule 34 request for inspection as outlined in ECF NO. 23 is DENIED. A separate order shall follow.

Date: February 6, 2020

/s/
J. Mark Coulson
United States Magistrate Judge