IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DENISE SHACKLEFORD,

    *Plaintiff,*

    *v.*

VIVINT SOLAR DEVELOPER LLC,

    Civil Action No. ELH-19-954

*Defendant.*

## MEMORANDUM OPINION

Plaintiff Denise Shackleford has filed suit against defendant Vivint Solar Developer LLC ("Vivint"), alleging a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "FCRA" or the "Act"). *See* ECF 1. This Memorandum Opinion resolves "Plaintiff's Objection To Report And Recommendation" (ECF 30, the "Objection") filed by plaintiff as to discovery rulings made by U.S. Magistrate Judge Mark Coulson in a Memorandum Opinion (ECF 28) and Order (ECF 29) of February 6, 2020. Five exhibits are attached to the Objection. ECF 30-1 to ECF 30-5. Defendant opposes the Objection (ECF 31) and has submitted three exhibits. ECF 31-1 to ECF 31-3. Plaintiff has not replied and the time to do so has expired.[1]

---

[1] Ordinarily, Ms. Shackleford's reply would have been due on March 19, 2020. Local Rule 105.2(a). However, in light of the COVID-19 pandemic, Chief Judge Bredar extended by 84 days all filing deadlines set to fall between March 16, 2020, and June 5, 2020, unless the judge set a different date. *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order 2020-07 (D. Md. Apr. 10, 2020). Therefore, the reply was due June 11, 2020.

On June 18, 2020, Vivint filed a submission advising the Court as to the status of certain discovery issues.  ECF 32.  And, on June 23, 2020, plaintiff moved to strike defendant's supplemental filing.  ECF 33 (the "Motion to Strike").

No hearing is necessary to resolve the Objection.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Objection in part and grant it in part. And, I shall deny the Motion to Strike.

## I.   Background

Plaintiff resides in Westminster, Maryland.   ECF 1, ¶ 5.   Vivint, a limited liability company headquartered in Lehi, Utah, sells solar energy products.  *Id.* ¶ 6.  Ms. Shackleford alleges that Vivint violated the FCRA, 15 U.S.C. § 1681, in connection with an interaction that she had with a Vivint salesperson on September 5, 2018. *Id.* ¶ 49.

Ms. Shackleford alleges that on September 5, 2018, she was solicited at her home by Brett Sears, an employee of Vivint.  *Id.* ¶¶ 7, 10.  Mr. Sears greeted plaintiff by name and stated that he was there on behalf of her energy provider, Baltimore Gas & Electric ("BG&E").  *Id.* ¶¶ 7-9.  Mr. Sears then pitched "a '100% free' solar energy product," averring that the product was "provided at 'no charge to [plaintiff]' because 'Maryland receives federal money for people installing solar panels.'"  *Id.* ¶ 12.

Mr. Sears allegedly told plaintiff that he wanted "to do a survey" to determine how much money she could save on electricity.  *Id.* ¶ 13.  He asked to see Ms. Shackleford's BG&E bills, but she was running a computer scan and could not access her bills at the time.  *Id.* ¶¶ 14-15. Mr. Sears then asked Ms. Shackleford for the last four digits of her social security number so that he could access her electric bills using his electronic tablet.  *Id.* ¶ 16.  Plaintiff complied.  *Id.*

Then, Mr. Sears asked to enter Ms. Shackleford's home and take pictures of her breaker box. *Id.* ¶ 17. When plaintiff refused, Mr. Sears replied that he had already taken pictures of her outside meter. *Id.* ¶ 18. Ms. Shackleford asked Mr. Sears why he had taken photos of her property without her permission, and Mr. Sears responded that it was "'just something we do so we can estimate how much money you will save with solar panels.'" *Id.* ¶ 19.

According to plaintiff, Mr. Sears then asked her to sign a digital box on his iPad tablet to "see if she was 'financially stable enough,'" but she "recoiled" and stated that she would not sign anything if it would allow access to her credit report. *Id.* ¶¶ 20-21. Mr. Sears allegedly assured Ms. Shackleford that he would not pull her credit and only needed her signature to verify that he had visited her home. *Id.* ¶ 22. Plaintiff signed the signature box, believing that she was merely verifying Mr. Sears' visit. *Id.* ¶ 24.

A few days later, plaintiff allegedly received a notification that Vivint "had made a hard inquiry on her consumer credit reports." *Id.* ¶ 26. Plaintiff was "shock[ed], worr[ied] and ang[ry]," *id.* ¶ 26, because she "did not authorize Vivint Solar to obtain her consumer report at any time." *Id.* ¶ 31. On September 24, 2018, Ms. Shackleford filed a complaint against Vivint with the Better Business Bureau. *Id.* ¶ 27. In response, on October 9, 2018, Vivint sent letters to the credit bureaus, asking to remove its inquiry from plaintiff's credit reports. *Id.* ¶ 28. Nevertheless, plaintiff alleges that Vivint's inquiry still remains on her credit reports. *Id.* ¶ 29.

This suit followed on March 29, 2019. ECF 1. Plaintiff alleges that Vivint has a pattern and practice of regularly obtaining consumer credit reports without a permissible purpose and/or by false and fraudulent representations, in violation of the FCRA. ECF 1, ¶¶ 37-43. According to plaintiff, Vivint "willfully and/or negligently" violated the FCRA. *Id.* ¶ 50. She seeks

3

compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs. *See id.*

Defendant answered the suit on May 13, 2019. ECF 4. Thereafter, on June 18, 2019, the Court issued a Scheduling Order (ECF 10), setting, *inter alia*, a deadline of November 18, 2019 to complete discovery. An Amended Scheduling Order was entered on November 8, 2019, extending the discovery deadline to January 21, 2020.

On November 6, 2019, plaintiff filed a "Certification of Andrew Milz, ESQ. In Support Of Motion To Compel Discovery Pursuant To Loc. R. 104.7." ECF 19. In the submission, plaintiff asserted that she had served interrogatories and requests for production on Vivint on July 11, 2019, but Vivint's responses were deficient. *Id.* at 1. In particular, Ms. Shackleford complained that Vivint had failed to produce evidence of similar consumer complaints; prospective customer consent forms collected by Vivint from residents in her neighborhood in September 2018; the names of Vivint employees who solicited customers in plaintiff's neighborhood at the relevant time; and training videos and print materials pertaining to the FCRA. *Id.* at 1-2.

On January 14, 2020, Ms. Shackleford requested a conference to discuss the pending motion to compel as well as a new discovery issue. ECF 23. Specifically, plaintiff accused Vivint of refusing to allow her to inspect an iPad containing the version of the credit consent form utilized by Mr. Sears. *Id.* at 2-3. Ms. Shackleford argued that the inspection was necessary because the parties disagreed as to whether the signature page on Mr. Sears' iPad contained a disclaimer authorizing a credit pull. *Id.* In light of these disputes, I referred all discovery matters

4

to Judge Coulson on January 15, 2020.  ECF 25.  Vivint responded to plaintiff's contentions on February 5, 2020.  ECF 27.

Judge Coulson resolved these discovery disputes in a Memorandum Opinion (ECF 28) and Order (ECF 29) of February 6, 2020.  In particular, Judge Coulson granted in part and denied in part plaintiff's motion to compel evidence pertaining to Vivant's mental state.  And, he denied plaintiff's request to inspect a Vivint iPad.

First, Judge Coulson denied Ms. Shackleford's request for Vivint to identify and produce all complaints concerning consumer reports.  ECF 28 at 5-6.  He reasoned, *id.* at 6:

> Complaints regarding the conduct of other employees are not relevant to whether Mr. Sears conducted an unauthorized credit report pull during his September 8, 2018 interaction with Plaintiff. Although Plaintiff has directed the Court to other decisions either allowing for or citing the need for "other similar incidents" to show willfulness, in the main those cases dealt with challenged corporate processes, not the particular behavior of an identified employee in the field on a given occasion. That said, Defendant will produce any such complaints citing Mr. Sears' conduct.

Likewise, Judge Coulson rejected plaintiff's argument that she was entitled to all prospective consumer consent forms collected by Vivint within her zip code during September 2018.  *See id.* at 6-7.  Judge Coulson concluded that the request was overbroad because it was "not limited to forms that led to complaints."  *Id.*  Moreover, he reasoned that such forms had little relevance to plaintiff's suit because "if the forms did lead to complaints, those forms not completed by Mr. Sears do not make it any more or less likely that his interaction with Plaintiff was wrongful."  *Id.* at 7.  Judge Coulson also found that the requests were unduly burdensome, given that "producing the forms of other customers would necessarily entail an analysis of the circumstances of their interactions with Defendant's salesforce and also potentially put their personally-identifiable information under scrutiny in litigation where they are not parties."  *Id.*

5

As to plaintiff's request for training videos, Judge Coulson ordered Vivint to "compel the production of training videos addressing FCRA compliance with respect to credit report pulls that were either: viewed by Mr. Sears, or available to him at the time of his training and until the time of his interaction with Plaintiff." *Id.* at 8.  But, he rejected Ms. Shackleford's demand that Vivint turn over training videos pertaining to "sales ethics," a term that  was not defined and which "could encompass matters well beyond the FCRA provision at issue." *Id.*

With respect to plaintiff's request for the identification of other Vivint employees who solicited customers in Ms. Shackleford's zip code, Judge Coulson found that Vivint had already disclosed the names of Mr. Sears' supervisors. *Id.*  This was a "sufficient response at this juncture," according to Judge Coulson, because the "mere possibility that other employees might contradict Mr. Sears or his managers, without more, does not justify ordering a more expansive answer." *Id.*  However, Judge Coulson qualified his ruling, observing that "[i]f discovery uncovers information that would specifically call into question the veracity of such testimony" he "might reconsider a narrowed version of this request to include one or more of Mr. Sears' immediate co-workers at the time of his interaction with Plaintiff." *Id.*

Judge Coulson observed that Vivint had produced the relevant portions of its Resident Customer operations manual. *Id.* at 9.  Nonetheless, he directed Vivint to disclose any "policies and procedures outside the manual that nonetheless apply to Mr. Sears' conduct with respect to obtaining credit reports at the time of his interaction with Plaintiff . . . ." *Id.*

Regarding plaintiff's request to inspect Vivint's iPad, Judge Coulson observed that on December 19, 2019, plaintiff served Vivint with a Rule 34 Inspection Notice to inspect an iPad in Vivint's  possession that contained Version 4.0 of Vivint's credit consent form. *Id.* at 9.

Plaintiff argued this inspection is necessary to resolve a factual dispute regarding what she saw on Mr. Sears' iPad.  In response, Vivint argued that it did not possess Version 4.0 because it had upgraded its software to Version 4.1.  Vivint argued that it could not reasonably recreate version 4.0 and that, in any event, the two versions of the customer consent form were identical.

Judge Coulson acknowledged that "whether the differences between version 4.0 and 4.1 are material, relative to Plaintiff's experience of the consent process as it then existed, are clearly a legitimate area of inquiry."  *Id.* at 10.  However, he found that Vivint's response to plaintiff's inquiry was sufficient.  He observed that Vivint's corporate designee testified during her deposition that there were no meaningful differences between the two versions of the consent form.  *Id.*  Vivint had also produced a declaration from Aaron Crosby, its IT Program Manager, to the same effect.  *Id.* (citing ECF 27-1).  In Judge Coulson's view, this evidence "adequately responds to the inquiry."  *Id.* Thus, while Ms. Shackleford "of course, remains free to argue that Mr. Sears did something to mislead her or to obscure the consent language" or "somehow manipulated its functionality," Judge Coulson ruled that she was not entitled to disrupt Vivint's business operations by forcing it to recreate Version 4.0 of the credit consent form.  *Id.* at 11.

This Objection followed on February 20, 2020.  ECF 30.

## II.  Standard of Review

### A.

Under Rule 72(a) of the Federal Rules of Civil Procedure,  a "pretrial matter not dispositive of a party's claim or defense" may be referred to a magistrate judge for resolution. *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 301.5(a); *Mvuri v. Am. Airlines, Inc.*, 776 F. App'x 810, 810 (4th Cir. 2019) (per curiam).  Rule 72(a) also provides for the review of the magistrate

judge's ruling.  A party who opposes the magistrate judge's order must "file objections to the order within 14 days after being served with a copy."  Fed. R. Civ. P. 72(a).  In such a case, the district court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."  *Id.*; *see Stone v. Trump*, 356 F. Supp. 3d 505, 511 (D. Md. 2019); *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 551 (D. Md. 2018); *Stonecrest Partners, LLC v. Bank of Hampton Roads*, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011).   In performing this review, the court may "receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636.

Clear error review is "deferential" but "not toothless."  *Butts v. United States*, 930 F.3d 234, 238 (4th Cir. 2019).  The clearly erroneous standard does not permit the reviewing court to ask whether the magistrate judge's ruling "is the best or only conclusion permissible based on the evidence" or to "substitute its own conclusions for that of the magistrate judge."  *Huggins v. Prince George's Cty.*, 750 F. Supp. 2d 549, 559 (D. Md. 2010); *see Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (observing that the clearly erroneous standard "does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently").  Rather, a "finding is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Butts*, 930 F.3d at 238 (quoting *Anderson*, 470 U.S. at 573).  An order is contrary to law if it "'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'"  *Sandoval v. Starwest Servs., LLC*, 1:17-cv-01053 (AJT/TCB), 2018 WL 2426269, at  *1 (E.D. Va. Feb. 16, 2018) (citation omitted).

A magistrate judge's resolution of a discovery dispute is ordinarily accorded substantial deference. *See Stone*, 356 F. Supp. 3d at 511; *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 n.5 (E.D. Va. 2010) (collecting cases). Therefore, the objecting party carries a heavy burden in persuading a district court to disturb a magistrate judge's ruling on a discovery matter. *See Stone*, 356 F. Supp. 3d at 511; *see also* 12 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE CIVIL § 3069 (3d ed. 2019) (noting that review of a magistrate's discovery ruling "might better be characterized as suitable for an abuse-of-discretion analysis"). Put simply, an objection is not a vehicle to nit-pick the magistrate judge's ruling. *See Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002); 12 FEDERAL PRACTICE AND PROCEDURE CIVIL § 3069 (describing setting aside a magistrate judge's ruling as "extremely difficult to justify").

In undertaking review of the Objection, Rule 26 of the Federal Rules of Civil Procedure is also relevant. Rule 26(b)(1) was amended in 2015, regarding the scope of discovery in civil cases, in an effort to curb widespread abuse in discovery. *See generally Symposium*, *The Future of Discovery*, 71 VAND. L. REV. (Nov. 2018). The Rule provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense *and proportional to the needs of the case . . . .*" (Emphasis added). The party seeking discovery has the burden to establish its relevancy and proportionality, at which point the burden shifts to the party resisting discovery to demonstrate why the discovery should not be permitted. *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018); *United Oil Co. v. Parts Ass'n*, 227 F.R.D. 404, 411 (D. Md. 2005).

Although Rule 26 does not define relevancy, it has been "'broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party.'"  *Revak v. Miller*, 7:18-CV-206-FL, 2020 WL 1164920, at *2 (E.D.N.C. Mar. 9, 2020) (citation omitted); *see Fish v. Air & Liquid Sys. Corp.*, GLR-16-496, 2017 WL 697663, at *2 (D. Md. Feb. 21, 2017) (Copperthite, M.J.); *see also Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010).  Nonetheless, a party is not entitled to limitless discovery.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (noting that "'discovery, like all matters of procedure, has ultimate and necessary boundaries'") (citation omitted).  Indeed, discovery "'must be measured against the yardstick of proportionality.'"  *Fish*, 2017 WL 697663, at *3 (citation omitted); *see Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 355 (D. Md. 2012).  Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Moreover, pursuant to Rule 26(b)(2)(C), a court may limit discovery *sua sponte* or at a party's request for any one of three reasons: "the discovery sought is unreasonably cumulative or duplicative"; it is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; or "the burden or expense of the proposed discovery outweighs the likely benefit."  *See Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("The simple fact that requested information is discoverable . . . does not mean that discovery must be had.").

Notably, the Fourth Circuit has given district courts a wide berth to control discovery. *See United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 323 (4th Cir. 2018); *see Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996) ("District courts enjoy nearly unfettered discretion to control the timing and scope of discovery . . . ."). As a result, "discovery rulings are generally not overturned on appeal 'absent a showing of clear abuse of discretion,'" which "will only be identified where discovery restrictions prevent a litigant from 'pursuing a litigation theory.'" *Ancient Coin Collectors Guild*, 899 F.3d at 323 (alteration and citation omitted).

**B.**

Congress enacted the FCRA, 15 U.S.C. § 1681 *et seq.*, to balance the competing interests of banking efficiency and consumer protection in the realm of credit reporting. *See Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 1545 (2016); *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001); *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 414-15 (4th Cir. 2001). The statute advances business interests by authorizing credit reporting agencies to generate consumer reports because of their "vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. §§ 1681(a)(3), 1681b(a). But, to safeguard consumers, the FCRA regulates the handling of consumer reports and limits the purposes for which they can be generated. *See id.* §§ 1681(b),1681(e); *see also Andrews*, 534 U.S. at 23.

Notably, the FCRA not only burdens consumer reporting agencies; it also creates duties for the creditors that furnish information to consumer reporting agencies and anyone who obtains a credit report. Of relevance here, the FCRA mandates, 15 U.S.C. § 1681b(f):

A person shall not use or obtain a consumer report for any purpose unless—

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified . . . by a prospective user of the report through a general or specific certification.

Among other purposes, the FCRA authorizes a consumer reporting agency to furnish a consumer report to a third party if it has reason to believe that the third party, *id.* § 1681b(a)(3):

> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> (F) otherwise has a legitimate business need for the information –
>
>> (i) in connection with a business transaction that is initiated by the consumer; or
>>
>> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

To give effect to these provisions, the FCRA creates a private right of action for injured consumers. *See Safeco Ins. Co.*, 551 U.S. at 53. And, the FCRA imposes civil liability on any "person"—which includes any individual, corporation, or other entity—that fails to comply with the Act's requirements. *See* 15 U.S.C. §§ 1681a(b), 1681n, 1681o; *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899-900 (4th Cir. 2003).

To state a claim for improper acquisition of a credit report under § 1681b(f), a plaintiff must allege: "(1) there was a consumer report; (2) obtained or used by the defendant; (3) without a permissible purpose . . . and (4) the defendant acted with the specified mental state." *Alston v. Freedom Plus/Cross River*, TDC-17-0033, 2018 WL 770384, at *4 (D. Md. Feb. 7, 2018); *see also Bickley v. Dish Network, LLC*, 751 F.3d 724, 728 (6th Cir. 2014); *Glanton v. DirecTV, LLC*,

12

172 F. Supp. 3d 890, 894 (D.S.C. 2016); *Bolden v. McCabe, Weisberg & Conway, LLC*, DKC-13-1265, 2013 WL 6909156, at *3 (D. Md. Dec. 31, 2013).  Regarding the defendant's mental state, the plaintiff must plausibly allege that the defendant either negligently or willfully violated the FCRA.  *See* 15 U.S.C. § 1681o (negligent violation); § 1681n (willful violation); *see also Ausherman*, 352 F.3d at 900-01.

Under § 1681o, a consumer is entitled to actual damages if the defendant negligently violates the FCRA's requirements.  *See Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235, 239 (4th Cir. 2009).  Actual damages may include economic damages and damages for humiliation and mental distress.  *See Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th Cir. 2007).  If, however, the violation was willful, then § 1681n entitles the consumer to actual damages or statutory damages as well as punitive damages.  *Robinson*, 560 F.3d at 239.

To prove willfulness under § 1681n, the plaintiff need not show that that the defendant acted with "malice or evil motive."  *Dalton*, 257 F.3d at 418.  Rather, the plaintiff must "only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer."  *Ausherman*, 352 F.3d at 900 (quoting *Dalton*, 257 F.3d at 418).  Thus, § 1681n encompasses not only purposeful violations of the Act but also reckless conduct.  *See Safeco Ins. Co.*, 551 U.S. at 56-57.  A company acts in reckless disregard of the FCRA if its "action is not only a violation under a reasonable reading of the statute's terms" but also "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* at 69.

Whether a defendant acted willfully is a fact-intensive inquiry.  *See Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 434 (E.D. Va. 2015).  Although a state of mind, such

as willfulness, can be alleged generally, *see* Fed. R. Civ. P. 9(b), conclusory allegations of the defendant's mental state do not suffice.   In the FCRA context, the plaintiff must plead facts beyond a mere assertion of a violation to support the plausible inference that the defendant acted intentionally or recklessly.   *See, e.g.*, *Pinson v. JPMorgan Chase Bank, NA*, 942 F.3d 1200, 1213-14 (11th Cir. 2019) (plaintiff stated plausible willful violation where defendant repeatedly pulled credit report without a permissible purpose); *Alston v. Freedom Plus*, TDC-17-33, 2018 WL 770384, at *6 (D. Md. Feb. 7, 2018) (plaintiff alleged willful violation where defendants allegedly concealed possession of credit reports); *Martin v. Asset Acceptance, LLC*, No. 11 CV 6256, 2012 WL 3042524 (N.D. Ill. July 25, 2012) (plaintiff alleged willful violation where defendant allegedly accessed only credit reports belonging to customers with closed accounts).

## III.  Discussion

Ms. Shackleford assigns two errors to Judge Coulson's ruling.   First, plaintiff argues that Judge Coulson clearly erred in denying discovery of consumer complaints lodged against Vivint and the identities of other Vivint salespersons on the ground that such evidence is necessary to establish willfulness.   *See* ECF 30 at 4-11.   According to Ms. Shackleford, Judge Coulson was wrong to cabin discovery to complaints involving Mr. Sears because her FCRA claim is against Vivint, not Mr. Sears, and therefore she needs a trove of consumer complaints to show that Vivint's management consciously disregarded the substantial risk that its practices violated consumer privacy.   *See id.*   For the same reasons, Ms. Shackleford contends that Judge Coulson erred in refusing to require Vivint to disclose the identities of other Vivint salespersons.   *Id.* at 11.

14

Second, Ms. Shackleford asserts that Judge Coulson committed clear error in denying her "further discovery and expert analysis of" Vivint's iPads with version 4.0. of the consumer consent form. *Id.* at 12-13. Plaintiff argues that Vivint's IT manager, Mr. Crosby, made a "boilerplate, conclusory assertion" regarding the differences between versions 4.0 and 4.1, which did not "meet the burden for a discovery objection." *Id.* Further, Ms. Shackleford attacks Judge Coulson's failure to address her request for spoliation sanctions. *Id.* at 12.

In response, Vivint accuses Ms. Shackleford of engaging in a "fishing expedition" for discovery that is irrelevant, disproportionate to the needs of the case, and unduly burdensome to produce. ECF 31 at 13; *see id.* at 11-16. Vivint contends that discovery concerning other customers' complaints and other Vivint salespersons is irrelevant because it has no bearing on Vivint's credit pull of Ms. Shackleford and, in any event, is disproportionate to the needs of this "single-plaintiff, single-claim case" where damages are lacking. *Id.* at 13; *see id.* at 13-16. As to the iPad, Vivint vigorously defends Judge Coulson's ruling, asserting that Version 4.0 is irrelevant and would be unduly burdensome to produce. *See id.* at 17-18. Vivint also avers that Ms. Shackleford is not entitled to spoliation sanctions because she has never established that spoliation occurred under the framework of Fed. R. Civ. P. 37(e) and she has suffered no prejudice due to the unavailability of Version 4.0. *Id.* at 18-20.

I address each discovery issue, sequentially.

### A.

First, Ms. Shackleford asserts that Judge Coulson unduly narrowed the scope of discovery by denying her requests for other consumer complaints and the identities of other Vivint sales representatives. *See* ECF 30 at 4-11. Regarding consumer complaints, Ms.

Shackleford propounded the following discovery requests to Vivint, ECF 19-1 at 6–7, without any temporal limitation:

> **Request for Production No. 20:** Any complaints (formal or informal, civil, regulatory or administrative) served upon you that involved cases where there were allegations that you obtained a consumer report without a 'permissible purpose' as required under § 1681b of the FCRA.
>
> **Interrogatory No. 13:** Identify all complaints received by you relating to you obtaining a consumer report or accessing a person's consumer file without having a permissible purpose as described under § 1681b of the FCRA, and in so doing, include the name of the complainant, the date of the complaint or dispute, whether said complaint or dispute was in writing, the nature of the complaint or dispute and the disposition of the complaint or dispute. In addition, identify and describe the location and content of any documents related to said complaints or dispute.

Ms. Shackleford insists that this evidence is necessary to establish that Vivant willfully violated the FCRA.  *See* ECF 30 at 4-10.  That is so, she argues, because the existence of other consumer complaints would show that Vivint's corporate leadership had notice that the company's sales practices may violate the FCRA but disregarded those risks.  *Id.* at 8. Therefore, plaintiff contends that Judge Coulson "veered from FCRA authorities in concluding that only the willfulness of the salesperson is relevant, as opposed to the willfulness of the company, Defendant Vivint Solar," *id.* at 6, because it is "uncontroversial hornbook law that the culpable mental state of a corporation can be shown by the conduct of the corporation's officers and directors."  *Id.* at 8.  In her view, Judge Coulson's "narrow view of the willfulness inquiry would effectively immunize corporate officers" from liability.  *Id.* at 7.

I agree with Ms. Shackleford that other consumer complaints concerning improper credit pulls are relevant to establish willfulness under § 1681n.  However, because plaintiff's requests

are overbroad, and did not pertain to a specific and reasonable period of time, I shall narrow them.

As discussed, *supra*, a company willfully violates § 1681b by "'knowingly and intentionally commit[ing] an act in conscious disregard for the rights' of the consumer." *Ausherman*, 352 F.3d at 900 (quoting *Dalton*, 257 F.3d at 418).  The Fourth Circuit recognized in *Dalton*, 257 F.3d 409, that "evidence that other consumers have lodged complaints similar to [the plaintiff's] against [the defendant]" is one avenue of proof to establish the defendant willfully violated the FCRA.  *Id.* at 418.  In line with *Dalton*, other courts have found that consumer complaints containing allegations similar to those in the plaintiff's FCRA suit are relevant to the defendant's mental state.  *See, e.g.*,  *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016) (holding that the plaintiff failed to establish willfulness where the plaintiff "presented no evidence that anyone had lodged similar complaints against [the defendant]"); *Wenning v. On-Site Manager, Inc.*, No. 14 Civ. 9693(PAE), 2015 WL 5148753, at *3 (S.D.N.Y. Aug. 26, 2015)   (compelling discovery of consumer complaints because "complaints of a *similar* nature are relevant" to willfulness) (emphasis in original); *Valenzuela v. Equifax Info. Servs. LLC*, CV-13-02259-PHX-DLR, 2015 WL 1097315, at *1 (D. Ariz. Mar. 5, 2015) ("[S]imilar complaints might, at the very least, lead to the discovery of admissible evidence related to the willfulness issue."); *Holmes v. Telecheck Intern., Inc.*, 556 F. Supp. 2d 819, 847 (M.D. Tenn. 2008) ("Proof of a pattern and practice is relevant and is one way to establish willfulness" under the FCRA); *Edeh v. Equifax Info. Servs, LLC*, No. 11–CV–2671 (SRN/JSM), 2013 WL 1799006, at *2 (D. Minn. Apr. 29, 2013) (compelling discovery of consumer complaints);

17

In light of *Dalton*, I find that Judge Coulson erred in concluding that other consumer complaints involving improper credit pulls are "not relevant" to plaintiff's suit.  ECF 30 at 6. Nor was it accurate to say that the cases cited above "dealt with challenged corporate processes," whereas plaintiff's suit concerned "the particular behavior of an identified employee in the field on a given occasion."  *Id.*  Ms. Shackleford challenges a corporate process—how Vivint salespersons obtain consumers' authorization to access their credit.  Indeed, plaintiff does not allege that Mr. Sears was a rogue salesman who acted outside the scope of his authority.  Rather, she claims that, despite receiving numerous complaints, Vivint trained and encouraged its sales representatives to mislead consumers into authorizing Vivint to access their credit.  *See* ECF 1, ¶¶ 32, 43-44.  Accordingly, I am satisfied that Ms. Shackleford is entitled to consumer complaints to the extent that they are narrowly tailored to the facts and needs of this case.

That said, plaintiff's discovery requests are overbroad.  For starters, plaintiff requests that Vivint furnish and identify all complaints in Vivint's possession "where there were allegations that [Vivint] obtained a consumer report without a 'permissible purpose' as required under § 1681b of the FCRA."  ECF 19-1 at 6-7.  But, only complaints that allege similar conduct to that alleged in the Complaint are relevant to Ms. Shackleford's FCRA claims.  *See Wenning*, 2015 WL 5148753, at *3 (narrowing discovery requests seeking complaints to those complaints that were similar in nature).  Moreover, plaintiff's requests contain no temporal limitations.  Yet, only claims lodged before September 5, 2018, are relevant to whether Vivint knew its practices might run afoul of the FCRA when Mr. Sears knocked on Ms. Shackleford's door.  Accordingly, Vivint is directed to produce and identify all written complaints filed between September 1, 2016

and September 5, 2018, alleging that Vivint salespersons wrongfully obtained consent to perform credit pulls.

As for Shackelford's demand that Vivant identify other Vivint employees, I find no error in Judge Coulson's conclusion that plaintiff was not entitled to this discovery.  Plaintiff contends that the testimony of other salespersons regarding "deceptive sales pitch[es]" could establish Vivint's willfulness.  ECF 30 at 10-11.  However, as Judge Coulson observed, Vivint has already provided Ms. Shackleford with the names and images of the district managers to whom Mr. Sears reported.   ECF 28 at 8. Yet, there is no indication that plaintiff has deposed these individuals or that their testimony contradicted Mr. Sears' testimony regarding his training, instruction, and sales practices.  Further, Judge Coulson did not definitively close the door on this kind of discovery, instead ruling that he "might reconsider a narrowed version of this request" if plaintiff unearthed discovery that "call[ed] into question the veracity of" the testimony of Mr. Sears or his managers.  *Id.*  Thus, I find no clear error in Judge Coulson's ruling denying Ms. Shackleford's request regarding the identities of Vivint employees.

## B.

Likewise, I find no error in Judge Coulson's ruling denying plaintiff's request to compel Vivint to produce Version 4.0 of its credit consumer form.  Nor did Judge Coulson ignore Ms. Shackleford's request for spoliation sanctions.  I begin with plaintiff's insistence that Vivint must provide her with an iPad containing Version 4.0 of the consumer consent form.

During discovery, a party may request production of electronically stored information ("ESI") that is in the responding party's possession, custody, or control.   FED. R. CIV. P. 34. But, just because ESI is requested does not mean it must be produced.  Under Rule 26 of the

Federal Rules of Civil Procedure, the responding party is not required to produce discovery of ESI if the requested discovery is not reasonably accessible because of an undue burden or cost. *See* FED. R. CIV. P. 26(b)(2)(B).  In response to a motion to compel discovery, the party from whom the discovery is sought must show that the requested information is not reasonably accessible because of an undue burden or cost.  *Id.*

Vivint has consistently maintained that after installing Version 4.1, Version 4.0 was "discontinued and removed from [its] Document Library," and therefore it is not in Vivint's possession, custody, or control.  ECF 27 at 3; *see* ECF 31 at 17-18.  Further, even if it had possession of Version 4.0, Vivint argues that it could not make the software available without "impacting the use of Version 4.1 and disrupting Vivint's operations."  ECF 27 at 3; *see* ECF 31 at 4, 18.  That is so because loading Version 4.0 onto its Document Library, Vivint explains, would make it accessible to all sales representatives, creating confusion.  *See* ECF 27 at 2. Accordingly, Judge Coulson did not err in finding that Vivint has demonstrated that Version 4.0 is not readily accessible.  *See* ECF 31 at 18; FED. R. CIV. P. 26(b)(2)(B).

Moreover, even the slightest operational disruption suffered by Vivint would render Ms. Shackleford's request unduly burdensome, because versions 4.0 and 4.1 are "identical in all material respects."  ECF 27 at 2.  As Judge Coulson recounted in his Memorandum Opinion, Vivint has put forth sufficient evidence to show that there is no meaningful difference between versions 4.0 and 4.1 with respect to the Credit Authorization Form, the document at the center of Ms. Shackleford's lawsuit.  *See* ECF 28 at 10-11.  As explained by Vivint's IT manager, Mr. Crosby, there are only three differences between versions 4.0 and 4.1 of the credit consent form: "(1) the title 'Customer Credit Qualification Form' appears at the top of Version 4.1; (2)

20

Version 4.1 requests the last 4 digits of the prospective customer's social security number; and (3) Version 4.1 automatically populates the date when the CAF is signed." ECF 27-1 at 5. Notably, Mr. Crosby attested that there were no changes to the purpose, software design, or functionality of the Credit Authorization Form between versions 4.0 and 4.1. *See id.* In light of this evidence, Judge Coulson's ruling regarding the iPad is eminently reasonable.[2]

Similarly, plaintiff's contention that Judge Coulson "ignor[ed]" her request for spoliation sanctions, ECF 30 at 11, is groundless. For starters, Judge Coulson did not overlook plaintiff's request for sanctions. To the contrary, he addressed the issue head on, ruling that "the admissibility or significance, if any, at trial of the unavailability of Version 4.0 other than in paper form" was "a matter left to the sound discretion of the trial judge." ECF 28 at 12. And, Judge Coulson's decision to refrain from resolving the issue of spoliation could hardly be more correct.

Spoliation occurs when a party destroys or materially alters evidence or fails to preserve property that could be used as evidence in a pending or reasonably foreseeable case. *See Boone*

---

[2] On June 18, 2020, after this Memorandum Opinion had been drafted, Vivint informed that Court that because door-to-door sales had been suspended in the vast majority of jurisdictions in light of the COVID-19 pandemic, it temporarily reintroduced Version 4.0 into the Document Library on April 30, 2020, and created a screenshot video demonstrating how Version 4.0 would appear and function on a Vivint salesperson's iPad. ECF 32 at 2. Although Vivint removed the Version 4.0 from the Document Library the next day, it avers that it transmitted the screen shots to plaintiff. *Id.*

In response, plaintiff moved, on June 23, 2020, to strike defendant's submission. ECF 33. Because my ruling does not hinge on this information, I shall deny the Motion to Strike as moot.

*v. Everett*, 751 F. App'x 400, 401 (4th Cir. 2019) (per curiam); *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001).  Federal courts derive the power to sanction spoliation from two sources of authority: Fed. R. Civ. P. 37(e) and its inherent authority to control the judicial process.  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *EEOC v. Performance Food Grp., Inc.*, CCB-13-1712, 2019 WL 1057385, at *2 (D. Md. Mar. 6, 2019) (Gesner, M.J.); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103-04 (E.D. Va. 2018); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010).  Because a court must exercise its inherent authority with restraint, it will rely on statutory authority whenever applicable.  *See Chambers*, 501 U.S. at 44; *Victor Stanley, Inc.*, 269 F.R.D. at 518.

Rule 37(e) of the Federal Rules of Civil Procedure supplies such a statutory authority for addressing the spoliation of ESI.  *See Performance Food Grp.*, 2019 WL 1057385, at *2; *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 505-06 (D. Md. 2009) (Grimm, M.J.).  It provides:

> FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the loss of information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Accordingly, in order to obtain sanctions for the spoliation of ESI the moving party must satisfy four threshold elements: "(1) ESI should have been preserved, (2) ESI was lost, (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Steves & Sons*, 327 F.R.D. at 104.

Plaintiff gestures to spoliation sanctions once in her filing of January 14, 2020. ECF 23. And, the reference is easy to miss. Specifically, Ms. Shackleford states that Vivint's refusal to disclose the Version 4.0 consent form because Vivint replaced it with Version 4.1 "raises issues of spoliation pursuant to Rule 37(e)." ECF 23 at 2 (citing *Borum v. Brentwood Vill., LLC.*, 322 F.R.D 38, 45 (D.D.C. 2019)). This bare-bones assertion falls far short of mounting a claim for spoliation sanctions. *See, e.g.*, *Hensley ex rel. N.C. v. Price*, 876 F.3d 573, 580 n.5 (4th Cir. 2017) (noting that it is not the court's "'job to wade through the record and make arguments for either party'") (citation omitted). Indeed, plaintiff made no effort to apply Rule 37(e) to the facts of this case. Therefore, Judge Coulson can hardly be blamed for declining to address an argument that does not exist.

And, without developed arguments and a robust factual record, Judge Coulson could not pass on the issue. Resolving spoliation motions is a fact-intensive undertaking. *See e.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010) ("[T]he nuanced, fact-specific differences among these states of mind become significant in determining what sanctions are appropriate…"); *Pension Comm. v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 465 (S.D.N.Y. 2010) ("Each case will turn on its own facts and the varieties of efforts and failures is infinite."). A court must assess when the duty to preserve began, whether the accused party complied with its duty, the degree of the accused party's culpability, the relevance of the

destroyed evidence, and any prejudice suffered by the party seeking the evidence. *See Goodman*, 632 F. Supp. 2d at 508. Often, collecting this evidence will require a hearing. *See id.*

At this juncture, where discovery is not yet complete, it would be premature to have ruled on plaintiff's request for sanctions. In sum, I find no basis to disturb Judge Coulson's ruling as to Vivint's iPad and no reason to sanction Vivint for the spoliation of ESI. *See* ECF 28 at 12.[3]

### IV.  Conclusion

For the reasons set forth above, I shall affirm in part and deny in part Judge Coulson's Order (ECF 29). Therefore, I shall grant the Objection (ECF 30) in part and deny it in part. And, I shall deny the Motion to Strike (ECF 33).

An Order follows, consistent with this Memorandum Opinion.


Date:   June 25, 2020                        _____/s/_____

                                             Ellen Lipton Hollander
                                             United States District Judge

---

[3] In her Appeal, Ms. Shackleford asserts that she should be permitted to depose Mr. Crosby. ECF 30 at 13. A party may depose any person without leave of the court and compel the deponent's attendance with a subpoena. *See* Fed. R. Civ. P. 30(a)(1). Leave of court to depose a witness is necessary only if the parties have not stipulated to the deposition or if the deponent is imprisoned. *See* Fed. R. Civ. P. 30(a)(2). Plaintiff does not address whether she previously requested to depose Mr. Crosby. *See* ECF 30 at 13; ECF 31 at 20. But, she had until January 21, 2020, to do so.