**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| |
|---|
| DENISE SHACKLEFORD,<br>　　　　　　　　　　Plaintiff,<br>　　vs.<br><br>VIVINT SOLAR,<br>　　　　　　　　　　Defendant. |

NO. 1-:19-cv-00954-ELH

**PLAINTIFF'S MOTION TO REQUEST ADDITIONAL DOCUMENTS,
FOR LEAVE TO SERVE INTERROGATORIES,
AND TO COMPEL AN ANSWER TO INTERROGATORY NO. 14**

I.   **INTRODUCTION**

Faced with at least 30 separate consumer fraud lawsuits in six states,[1] three states' Attorneys General fraud investigations,[2] a federal securities fraud and shareholder derivative suit for failure to disclose a company-wide pattern and practice of fraudulent sales practices,[3] Defendant Vivint Solar has made their playbook clear—right here, in this case.  No discovery request will be answered without litigation and a court order. Period.  All of this in an effort to shield the truth from sunlight.

---

[1]　　A spreadsheet of the known deceptive sales practices lawsuits is attached as Exhibit A.

[2]　　*See In re Investigation of Vivint Solar, Inc.*, Assurance of Discontinuance No. 19-161 (N.Y. Jan. 6, 2020), *available at* https://www.fairwarning.org/wp-content/uploads/2020/03/NYAG-Vivint-settlement.pdf; *In re Vivint Solar Developer, LLC*, (N.J. Consent Order dated Aug. 19, 2019), available at https://www.nj.gov/oag/newsreleases19/Vivint-Solar-Developer-LLC.pdf; *Balderas v. Vivint Solar Developer, LLC*, D-202-CV-201801936, *available at* https://www.nmag.gov/uploads/PressRelease/48737699ae174b30ac51a7eb286e661f/AG_Balderas_Sues_Massive_Solar_Company_for_Defrauding_New_Mexicans___Jeopardizing_Their_Home_Ownership.pdf;

[3]　　*In re Vivint Solar, Inc. Sec. Litig.*, No. 1:19-cv-05777 (E.D. N.Y., Consolidated Class action Complaint filed at ECF 26). This case is herein referred to as the "Vivint Securities Fraud Case."

1

Vivint Solar has been ordered in five separate cases (in which plaintiff counsel instantly is involved) to turn over evidence that will further demonstrate the business model built on deception. Over the course of the past six months alone, Vivint Solar has been ordered to stand trial in four separate cases involving similar fraudulent conduct perpetrated by Vivint against consumers.[4]

Recently, on June 29, 2020, the plaintiffs in the Vivint Securities Fraud Case filed a Consolidated Class Action Complaint ("Class Action Complaint") exposing detailed and specific allegations of "widespread fraudulent sales practices" that Vivint concealed from the public and its investors. *See* Ex. B, Class Action Complaint ¶¶ 5, 9, 139. The Class Action Complaint identifies the statements of former Vivint employees describing Vivint's corporate culture of fraud, including one former worker who had personal knowledge of "several dozen" written communications to and from the Vivint Solar CEO David Bywater describing "serious allegations" of wrongdoing. Id. ¶¶ 39, 17.

This Court already ordered the production of consumer complaints, recognizing that these complaints are probative of Vivint's notice of the pattern and practice fraudulent credit pulls. However, the recent allegations in the Vivint Securities Fraud Case strongly suggest that Vivint is withholding what is perhaps the *most* probative evidence of corporate notice: emails and other written/oral communications among corporate leadership discussing fraudulent sales practices. The allegations in the Vivint Securities Fraud Case are also indicative of a pattern of fraudulent sales practices <u>in Maryland specifically</u>.

---

[4]   *See Droney v. Vivint Solar*, No. 18-849, 2020 WL 3425301 (D.N.J. June 23, 2020); *Reilly v. Vivint Solar*, No. 18-12356, 2020 WL 3046316 (D.N.J. June 8, 2020); *Littlejohn v. Vivint Solar*, No. 16-9446, 2020 WL 2521276 (D.N.J. May 18, 2020); *Brown v. Vivint Solar, Inc.*, No. 18-2838, 2020 WL 1332010 (M.D. Fla. Mar. 23, 2020).

In prior discovery responses, Vivint has made it clear that it objects to additional requests for production due to Plaintiff meeting the threshold of 30 requests per Local Rule 104(1). Recognizing that Rule 104(1) permits additional requests for production if "ordered by the Court," Plaintiff moves for leave to propound the attached nine (9) additional requests for production on Defendant. And although leave is not necessarily required, Plaintiff also moves for leave to propound the attached five (5) interrogatories on Defendant, notwithstanding any limitation on the number of interrogatories set forth in Federal Rule of Civil Procedure 33(a).[5] Finally, Plaintiff renews her motion to compel answers to existing Interrogatory No. 14, which seeks identification of salesman and district managers who worked in the same sales district as Bret Sears.

## II.   FACTS

Vivint deploys salespersons to the doors of unwitting consumers and feeds them a bucket of lies. Vivint's salesman told Ms. Shackleford about a "100% free" solar energy product provided at "no charge to you" because "Maryland receives federal money for people installing solar panels." ECF 1, Complaint ¶ 12. Later in his solicitation, the Vivint salesman reiterated that the solar panel system was free, and he asked Ms. Shackleford if she "liked to save money." Id. ¶ 18. When Vivint's salesman presented an electronic tablet for her to sign to see if she was "financially stable enough," Ms. Shackleford recoiled and declared that she would not sign anything that would give the company her credit report. Id. ¶¶ 20-21.

Vivint's salesman assured Ms. Shackleford that "we won't be pulling your credit," but that her signature was needed to "verify that I was here." Id. ¶ 22. These lies culminated in Ms.

---

[5]   To facilitate the timely completion of this discovery, and at the request of Defendant's counsel, Plaintiff has already served the Requests for Production and Interrogatories on Defendant on July 28, 2020.

Shackleford signing a box on the salesman's iPad, which Vivint later claimed was a credit consent form that gave it permission to pull Ms. Shackleford's credit report. And like that, Vivint orchestrated what amounts to a federal crime punishable by up to two years' imprisonment. See 15 U.S.C. § 1681q.[6]

Ms. Shackleford alleged that numerous consumers before her—in Maryland and elsewhere—had complained to Vivint about similar fraudulent practices. ECF 1, Complaint ¶¶ 37-42. Recently, this Court ordered Vivint to produce those complaints, recognizing the relevance of such complaints to corporate notice. *Shackleford v. Vivint Solar Developer LLC*, No. 19-954, 2020 WL 3488913 (D. Md. June 25, 2020). (similar consumer complaints relevant to willfulness because they could should that "despite receiving numerous complaints, Vivint trained and encouraged its sales representatives to mislead consumers into authorizing Vivint to access their credit"). However, Vivint appears to be withholding probably the most probative evidence of corporate knowledge of a pattern of impermissible pulls: emails and communications among corporate leadership.

Based on allegations in the Vivint Securities Fraud Case, it appears all but certain that such communications exist. The Vivint Securities Fraud Case filed against Vivint just last month on June 29, 2020 identifies several former Vivint salespersons who call out Vivint for its fraudulent practices. Class Action Complaint ¶¶ 31–60. According to the allegations of a District Manager who worked in Maryland and Virginia from April 2017 to August 2018, "Vivint employees used a number of fraudulent and unethical sales tactics. 'A lot of [sales staff] would zoom in on the signature so [customers] couldn't read the documents they were signing, and they would say, Hey,

---

[6] "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both." 15 U.S.C. § 1681q.

press this button.'" Class Action Complaint ¶¶ 31, 33 (brackets in original). This ex-Vivint employee who worked in Maryland stated that "'dozens' of sales staff engaged in fraudulent or unethical sales practices, estimating that about one-third of the sales staff in [his] region used a fraudulent or unethical sales practice at least once, and that it often came up in office conversations." Id. ¶ 35 (emphasis added). According to this former Maryland salesman, the corruption and unethical practices at Vivint was "one of the reasons [he] left the company. . . . [He] didn't like the idea that there were people that had to be doing things that weren't necessarily above board, and those people being celebrated for those results." Id.[7]

Vivint's culture of corruption and wrongdoing allowed for repeat offenders, apparently orchestrated by Vivint's management. According to another ex-Vivint employee, Vivint would protect its top-performing salespersons, "moving guys out of states because they got in too much trouble [in one location] and mov[ing] them to a different market." Id. ¶ 38 (brackets in original; quotation marks omitted). One former Vivint employee recalled a top-performing salesman who was kicked out of two states "and shifted to another market by the Company due to complaints about forgery and credit checks." Id.[8] (emphasis added). These corporate decisions to shuffle

---

[7]     Allegations of wrongdoing were also acknowledged by other former Vivint salespersons, whose statements are set forth in the Class Action Complaint. This includes salespersons who worked on the east coast in New Jersey, the south in Florida, and as far as Hawaii. Ex. B, Class Action Complaint ¶¶ 36–38.

[8]     Vivint's practice of shuffling around repeat offenders to different locations is reminiscent of the Catholic Church's abhorrent practice of shuffling around members of the clergy credibly accused of sexual abuse. *See* REPORT I OF THE 40TH STATEWIDE INVESTIGATING GRAND JURY, OFFICE OF THE ATTORNEY GEN., COMMONWEALTH OF PA. 185 (2018), *available at* https://www.attorneygeneral.gov/wp-content/uploads/2018/08/A-Report-of-the-Fortieth-Statewide-Investigating-Grand-Jury_Cleland-Redactions-8-12-08_Redacted.pdf ("The Grand Jury finds that this practice of transferring dangerous priests to other locations only expanded the pool of unknowing potential victims on which these offenders could re-offend.").

salesmen around to different states were likely the discussed and debated in emails, text messages, and perhaps ephemeral messages.[9]

Indeed, the Vivint Securities Class Action Complaint is replete with allegations of email and other communications among Vivint's corporate leadership about consumer complaints. According to a former Vivint employee who worked at Vivint's Utah headquarters handling the escalation of consumer complaints within the company as an "Executive Resolutions" specialist, his direct manager, Senior Manager of Executive Resolutions Tyler Anderson, "<u>communicated regularly with senior management, including defendant Bywater</u>." Class Action Complaint ¶¶ 56–57 (emphasis added). He explains that the Executive Resolutions team "logged the complaints in a Google Spreadsheet which included labels for complaints sent directly to Bywater's email address and those sent to Bywater via the 'CEO Promise Page' on Vivint's website." Id. ¶ 57.

According to another former Vivint employee, Vivint CEO "Bywater would send emails to the Company's entire sales team urging representatives to 'pick it up' when sales numbers were down." Class Action Complaint ¶ 128. This employee "stated that senior management held weekly telephone conference calls with all of the Company's sales managers where deceptive sales practices" were discussed. Id. ¶ 54. Another former employee "described weekly meetings with Bywater and other senior management where Anderson provided updates on the escalated

---

[9] "Ephemeral messages" are messages that "automatically delete after they have been sent and read." *WeRide Corp. v. Kun Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *8 (N.D. Cal. Apr. 24, 2020) (use of ephemeral messaging application DingTalk warranted sanctions of the entry of default); *see also* Dalila Hoover, "Ephemeral Messaging Apps Users: Use Caution During Anticipated or Ongoing Litigation," AM. BAR ASS'N (Feb. 28, 2020), *available at* https://www.americanbar.org/groups/litigation/committees/pretrial-practice-discovery/practice/2020/ephemeral-messaging-apps-users-use-caution-during-anticipated-or-ongoing-litigation/ (last accessed July 29, 2020) (collecting cases discussing spoliation in the context of ephemeral messaging or data).

complaints." Id. ¶ 59. The investigatory team "emailed summaries of the investigation and findings to Anderson who would then send the emails to Bywater and/or reference them in weekly meetings." Id. ¶ 60.

Yet another former Vivint employee stated he "was copied on emails regarding customer complaints and stated that if serious allegations were made, such as forgery, <u>Vivint senior management was copied on the emails</u>, including regional vice presidents, vice presidents overseeing sales on the West and East Coasts, and Chief Sales Officer Chance Allred[,] and Chief Revenue Officer Paul Dickson who both reported directly to [Vivint CEO David] Bywater." Id. ¶ 39 (emphasis added). He recalls "several dozen" emails sent to CEO Bywater containing "serious allegations" of wrongdoing. Id.

This case is currently in an additional period of discovery. On July 28, 2020, at the request of Defendant's counsel, Plaintiff served the attached Supplemental Interrogatories and Supplemental Requests for Production on Vivint, requesting, *inter alia*, production of the above-discussed communications.[10] Consistent with Local Rule 104(1), Plaintiff previously requested Defendant's consent to serve additional requests for production, but to date, Vivint has not stated whether they would consent. Accordingly, Plaintiff files this motion seeking an order that would permit Plaintiff to issue nine requests for production on the issue of Vivint's above-discussed communications and spoliation. Plaintiff also requests leave to propound six interrogatories on those issues, and renews her interrogatory for the identification of salespersons and district managers who worked with Bret Sears.

---

[10] Plaintiff's Supplemental Requests for Production of Documents to Defendant are attached as Exhibit C. Plaintiff's Supplemental Interrogatories to Defendant are attached as Exhibit D.

**III.    ARGUMENT**

This Court's Local Rules set an initial threshold of 30 requests for production unless additional requests are "agreed upon by the parties," or "otherwise ordered by the Court[.]" Local Rule 104(1).  A party may seek leave of court to issue additional requests for production where there is good cause to believe that relevant discovery has not been produced. *See Alvarez v. Johns Hopkins Univ.*, No. 15-950, 2019 WL 2210644, at *8 (D. Md. May 21, 2019) ("plaintiffs may seek leave of the court to issue a limited number of additional RFPs in excess of those already served if plaintiffs believe there are remaining documents to which they have not had access").

**A. Communications with and among Vivint's Senior Management**

The Class Action Complaint in the Vivint Securities Fraud Case reveals that Vivint has yet to produce "several dozen" email communications with and among its senior corporate management, including its CEO David Bywater. Ex. B, Class Action Complaint ¶¶ 39, 56–57, 60. The communications included "a Google Spreadsheet which included labels for complaints sent directly to Bywater's email address." *Id.* at 57.  According to a witness described in the Class Action Complaint, "weekly meetings with Bywater and other senior management" were held where a senior manager "provided updates on the escalated complaints." *Id.* at 59. Consistent with this averment, another witness stated that "senior management held weekly telephone conference calls with all of the Company's sales managers where deceptive sales practices" were discussed. *Id.* ¶ 54.

Accordingly, Plaintiff has propounded the following five Requests for Production of Documents seeking these email communications, as well as other relevant documents and information pertaining to the knowledge of Vivint's Senior Management[11]:

**1.** All emails, text messages, and other written or electronic communications sent or received by Vivint's Senior Management during the Relevant Period[12] discussing or mentioning allegations or investigations of a Vivint salesperson misrepresenting the purpose of a form in furtherance of a credit pull.

**2.** All emails, text messages, and other written or electronic documents or communications sent to David Bywater's email address(es) during the Relevant Period, which attached a Google Spreadsheet that included a label for complaints.

**3.** All emails, text messages, and other written or electronic documents or communications received during the Relevant Period by Vivint via the "CEO Promise Page" on Vivint's website, which mentioned allegations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull.

**4.** All documents, including but not limited to meeting notes or meeting minutes, memorializing any in-person meetings or telephone calls occurring during the Relevant Period where Vivint's Senior Management discussed or mentioned allegations or investigations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull.

**5.** All emails, text messages, and other written or electronic documents or communications sent or received by Vivint's Senior Management during the Relevant Period that can be identified by the following Boolean search terms:
   a. "Impermissible pull";
   b. "Impermissible credit pull";
   c. "credit check";
   d. "misrepresent!" and "credit";[13]
   e. "misrepresent!" and "consent!";
   f. "misrepresent!" and "consumer report";
   g. "misrepresent!" and "credit report";
   h. "misrepresent!" and "CAF";

---

[11] The term "Vivint's Senior Management" is defined as "Vivint's corporate officers, chief executives, directors, presidents, and vice presidents, senior managers, and district managers."

[12] The term "Relevant Period" is defined as on or before September 5, 2018, the date of the credit pull of Plaintiff Shackleford's consumer report.

[13] The Requests for Production clarify that use of the "!" in reference to a Boolean search term means that all variations of the ending of that term should be searched as well. For example, the term "object!" would include "object," "objected," "objection," and "objecting."

      i.      "misrepresent!" and "Credit Authorization Form";
      j.      "misrepresent!" and "PCCF";
      k.      "misrepresent!" and "Prospective Consumer Consent Form";
      l.      "fraud!" and "credit";
      m.      "fraud!" and "consent!";
      n.      "fraud!" and "consumer report";
      o.      "fraud!" and "credit report";
      p.      "fraud!" and "CAF";
      q.      "fraud!" and "Credit Authorization Form";
      r.      "fraud!" and "PCCF";
      s.      "fraud!" and "Prospective Consumer Consent Form";
      t.      "complain!" and "credit";
      u.      "complain!" and "consent";
      v.      "complain!" and "consumer report";
      w.      "complain!" and "credit report";
      x.      "complain!" and "CAF";
      y.      "complain!" and "Credit Authorization Form";
      z.      "complain!" and "PCCF";
      aa.      "complain!" and "Prospective Consumer Consent Form".

Ex. C, Plaintiff's Supplemental Requests for Production of Documents to Defendant.

Plaintiff also propounded three discrete interrogatories related to communications among Vivint's Senior Management. Although Plaintiff is currently within the 25-interrogatory threshold set forth in Federal Rule of Civil Procedure 33(a), Plaintiff also seeks leave to propound these interrogatories to the extent Vivint contends that these Interrogatories exceed the number permitted by Rule 33. The interrogatories seek information regarding the modes of communication used by Vivint's Senior Management and other relevant Vivint employees. Given the pervasiveness of alternative modes of communications such as Zoom, online messaging platforms, and ephemeral text messaging platforms (*e.g.* Signal, Snapchat, and DingTalk),[14] Plaintiff seeks identification of these alternative modes of communication where Vivint's Senior Management used them for

---

[14] See footnote eight, *supra*, for authorities discussing spoliation in the context of ephemeral messaging technologies.

10

work-related purposes, whether the device used to make that communication is personal property or business property. These interrogatories are provided below:

> **15.** Identify each individual who served in Vivint's Senior Management, during the Relevant Period, and in doing so, also state:
> a. The job title and job description for each role held while working for Vivint;
> b. the email address(es) used; and,
> c. the duration of each such role.
>
> **16.** Identify all audio, video, and text messaging platforms used by the following individuals during the Relevant Period to send or receive work-related communications, and additionally specify the device used for each such : David Bywater, Dana Russell, Jeremy Sabin, Tyler Anderson, Chance Allred, Paul Dickson, Jed Wintle, Bret Sears, Colt Reid, and Thomas Plagemann.
>
> **17.** Identify all audio, video, and text messaging platforms used by Vivint's Senior Management during the Relevant Period to send or receive work-related communications, excluding the individuals identified in Interrogatory 16.

Ex. D, Plaintiff's Supplemental Interrogatories to Defendant.

## B. Identification of other salespersons in Maryland

During discovery, Plaintiff sought identification of other salespersons who worked in the same sales district as Bret Sears, as Plaintiff believed those salespersons would provide testimony that contradicted the testimony of Sears regarding his training, instruction, and sales practices. In ruling that Plaintiff was not entitled to this discovery, "Judge Coulson did not definitively close the door on this kind of discovery, instead ruling that he 'might reconsider a narrowed version of this request' if plaintiff unearthed discovery that 'call[ed] into question the veracity of' the testimony of Mr. Sears or his managers." *Shackleford*, 2020 WL 3488913, at *9.

The allegations in the Vivint Securities Fraud Case specifically calls out Maryland as a cesspool for fraudulent sales practices. According to the allegations of a District Manager who worked in Maryland and Virginia from April 2017 to August 2018, "Vivint employees used a number of fraudulent and unethical sales tactics. '**A lot of [sales staff] would zoom in on the**

11

**signature so [customers] couldn't read the documents they were signing, and they would say, Hey, press this button**.'" Class Action Complaint ¶¶ 31, 33 (brackets in original; emphasis added). This is precisely the fraudulent conduct alleged in the instant case.

This ex-Vivint employee who worked in Maryland stated that "'dozens' of sales staff engaged in fraudulent or unethical sales practices, estimating that about one-third of the sales staff in [his] region used a fraudulent or unethical sales practice at least once, and that it often came up in office conversations." Id. ¶ 35 (emphasis added). According to this former Maryland salesman, the corruption and unethical practices at Vivint was "one of the reasons [he] left the company. . . . [He] didn't like the idea that there were people that had to be doing things that weren't necessarily above board, and those people being celebrated for those results." Id.

Plaintiff accordingly renews her motion to compel existing Interrogatory 14,[15] which requests identification of all Maryland salespersons and district managers who worked with Bret Sears.

**C. Discovery on the issue of Spoliation**

Defendant's conduct in the course of discovery also warrants additional discovery on the issue of spoliation. The Court may recall previously denying Plaintiff's request for spoliation sanctions, explaining that "[a]t this juncture, where discovery is not yet complete, it would be premature to have ruled on plaintiff's request for sanctions." *Shackleford*, 2020 WL 3488913, at *12. Plaintiff accordingly seeks limited discovery on the issue of spoliation, and has propounded

---

[15]   See Ex. E, Defendant's Objections and Responses Interrogatories No. 14. Specifically, Plaintiff's Interrogatory No. 14 stated, "With respect to the salesperson alleged to have solicited Plaintiff (Complaint ¶ 7), identify the District Manager to whom that salesperson reports, as well as all other salespersons who work (or worked) in the same district as that salesperson."

three (3) Interrogatories and three (3) Requests for Production in reference to the same. The interrogatories are as follows:

> **18.** Identify all individuals who played a role in designing, creating, implementing, removing, and deleting Version 4.0 of the credit consent form, and in so doing, briefly explain their role.
>
> **19.** Identify all individuals who played a role in designing, creating, implementing, removing, and deleting Version 4.1 of the credit consent form, and in so doing, briefly explain their role.
>
> **20.** State as precisely as possible the current location of credit consent form Version 4.0 and the associated metadata.

Ex. D, Plaintiff's Supplemental Interrogatories to Defendant.

> The requests for production are as follows:
>
> **6.** Your policies for the retention or preservation of electronically stored information and documents.
>
> **7.** All emails, text messages, and other written or electronic communications relating to Vivint's decision to change the credit consent form from Version 4.0 to version 4.1.
>
> **8.** All emails, text messages, and other written or electronic communications relating to Vivint's decision to temporarily reintroduce Version 4.0 of the credit consent form into the Document Library on April 30, 2020, and Vivint's subsequent decision to remove Version 4.0 from the Document Library.
>
> **9.** All metadata pertaining to credit consent form 4.0.

Ex. C, Plaintiff's Supplemental Requests for Production of Documents to Defendant.

This Court explained that spoliation requires assessment of various factors, including "when the duty to preserve began, whether the accused party complied with its duty, the degree of the accused party's culpability, the relevance of the destroyed evidence, and any prejudice suffered by the party seeking the evidence. Often, collecting this evidence will require a hearing." *Shackleford*, 2020 WL 3488913, at *11 (internal citation omitted). Plaintiff's Interrogatories and Requests for Production are directed at these spoliation factors. For example, metadata pertaining

13

to Version 4.0 may reveal whether Defendant complied with its duty to preserve. Communications regarding the removal of Version 4.0 from the Document Library may show that it was done in bad faith.

### IV. CONCLUSION

"A lawsuit, it has been well said, 'is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided.'" *Coogan v. Cornet Transp. Co.*, 199 F.R.D. 166, 168 (D. Md. 2001) (quoting *McDougall v. Dunn*, 468 F.2d 468, 473 (4th Cir. 1972)). By all appearances, Vivint has deliberately orchestrated an attempt to withhold highly relevant communications and evidence behind vague objections of proportionality and relevance. This Court should allow the search for the truth to continue and grant Plaintiff's Motion.

Date: July 29, 2020                          *s/ Andrew M. Milz*
                                                             CARY L. FLITTER
                                                             ANDREW M. MILZ
                                                             JODY THOMAS LÓPEZ-JACOBS

                                                             FLITTER MILZ, P.C.
                                                            450 N. Narberth Avenue, Suite 101
                                                            Narberth, PA 19072
                                                            Telephone: (610) 822-0782
                                                            Fax: (610) 667-0552

**CERTIFICATE OF SERVICE**

    This is to certify that on July 29, 2020, I caused a true and correct copy of the forgoing Motion to Strike to be served to the following via ECF:

John D. Sadler (Bar No. 16421)
Matthew D. Lamb (Bar No. 20203)
Ballard Spahr LLP
1909 K Street NW, 12th Floor
Washington, D.C. 20006
Email: sadlerj@ballardspahr.com
Email: lambm@ballardspahr.com

Jenny N. Perkins (*pro hac vice*)
Ballard Spahr LLP
1735 Market St. 51st Floor
Philadelphia, PA 19103
Email: perkinsj@ballardspahr.com

                                              /s/Andrew M. Milz
                                              Andrew M. Milz
                                              Flitter Milz, P.C.
                                              450 N. Narberth Avenue, Ste. 101
                                              Narberth, PA 19072
                                              Telephone: (610) 822-0782

                                              *Counsel for Plaintiff (admitted pro hac vice)*