IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DENISE SHACKLEFORD | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 19-cv-00954-ELH |
| VIVINT SOLAR DEVELOPER LLC | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM AND ORDER**

This case has been referred to me for resolution of all discovery matters pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 24). Now pending before the Court is Denise Shackleford's ("Plaintiff") Motion to Request Additional Documents, For Leave to Serve Interrogatories, and to Compel an Answer to Interrogatory Number 14. (ECF No. 42). Vivint Solar Developer LLC ("Defendant" or "Vivint") filed an Opposition. (ECF No. 43). Plaintiff has not filed a Reply, and the time to do so has now passed. Loc. R. 105.2(a). The Court finds that no hearing is necessary. *See* Loc. R. 105.6. For the reasons stated below, Plaintiff's Motion is GRANTED.

I. BACKGROUND

This case arises out of Plaintiff's suit against Vivint under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, wherein she alleges that a Vivint field salesperson, Bret Sears, obtained her consumer credit report under false pretenses. (ECF No. 1 ¶¶ 7, 9, 10). Plaintiff alleges both negligent and willful violations of the Act based on Mr. Sears' alleged conduct and Vivant's corporate policies allegedly encouraging such conduct.

1

On July 11, 2019, Plaintiff served her first set of Interrogatories and Requests for Production on Vivint. (ECF No. 19-1 at 6). Vivint provided its written responses and objections on August 27, 2019. After conferring, the parties were unable to resolve all the issues outlined in Plaintiff's Reply, and accordingly Plaintiff filed a Motion to Compel on November 6, 2019. *Id*. On January 14, 2020, Plaintiff wrote to this Court and requested a telephonic conference to discuss the impending discovery deadline. (ECF No. 23). Plaintiff explained that she had deposed Vivint on January 8, 2020, however Vivint refused to "answer any questions related to those issues subsumed within the pending Motion to Compel." *Id.* at 1. In addition, Plaintiff advised the Court of a new discovery dispute, wherein Vivint objected to Plaintiff's request for physical inspection of an iPad device. *Id*. In light of the pending discovery issues, Judge Hollander referred this case to me for discovery.

As pertinent to the matter at hand, on February 6, 2020, I issued a Memorandum Opinion wherein I granted in part, and denied in part, Plaintiff's Motion to Compel. (ECF No. 28). On February 20, 2020, Plaintiff filed an Objection. (ECF No. 30). On June 25, 2020, Judge Hollander denied the Objection in part and granted it in part. (ECF No. 34 at 2). On July 9, 2020 Vivint filed a Motion to Amend/Correct ("Motion to Clarify") Judge Hollander's Order. (ECF No. 36). On July 13, 2020 Vivint filed a Motion requesting an extension of time. (ECF No. 39)  On July 15, 2020, Judge Hollander extended deadlines for document production, discovery, and dispositive pretrial motions. (ECF No. 40). The deadlines established therein were dependent on when Judge Hollander issued a ruling on the Motion to Clarify. *Id*. (directing Vivint to disclose consumer complaints within 30 days of the Court's ruling on Vivint's Motion to Clarify; extending the discovery deadline for 60 days after the Court's ruling; and requiring dispositive motions be

submitted in 90 days from her decision). Judge Hollander denied Vivint's Motion to Clarify on July 16, 2020. (ECF No. 41).

In the pending Motion, Plaintiff moves for leave to propound nine (9) additional requests for production and six (6) interrogatories. (ECF No. 42 at 3).[1]  Plaintiff also "renews her motion to compel answers to existing Interrogatory No. 14, which seeks identification of salesman and district managers who worked in the same sales district as Bret Sears." *Id*. Plaintiff's pending requests can be broken down into two categories: (1) information pertaining to Vivint's corporate knowledge, and (2) information regarding spoliation. These issues will be discussed in turn.

II. ANALYSIS

A. *Requests for Production regarding Corporate Communications*

On July 28, 2020 Plaintiff propounded nine additional requests for production on Vivint. On July 29, 2020, Plaintiff filed the pending motion to compel.[2] Five of these requests seek "email communications as well as other relevant documents and information" pertaining to the Defendant's corporate knowledge of a pattern of impermissible credit pulls. (ECF No. 42 at 9). Specifically, Plaintiff requests:

> (1). All emails, text messages, and other written or electronic communications sent or received by Vivint's Senior Management during the Relevant Period discussing or mentioning allegations or investigations of a Vivint salesperson misrepresenting the purpose of a form in furtherance of a credit pull.

---

[1] Plaintiff describes her request as one for five interrogatory questions. (ECF No. 42 at 3). However, the questions provided within Plaintiff's Motion, and in the attached exhibits, amount to six questions. (ECF No. 42 at 11, 13). Vivint similarly notes that Plaintiff requests six additional interrogatories.

[2] In filing the pending Motion, Plaintiff wholly disregarded the collaborative process outlined in my Memorandum to Counsel concerning discovery. (ECF No. 26). This process is intended to streamline the resolution of discovery disputes so as to preserve both the parties' and the Court's resources. Rather than follow my directive and file a "joint brief letter (not to exceed one page)," Plaintiff filed over one hundred pages with the Court. *See* (ECF No. 42). This, of course, invited an extensive Opposition. The parties are cautioned that further failures to comply could result in a summary denial of any future motions.

3

(2). All emails, text messages, and other written or electronic documents or communications sent to David Bywater's email address(es) during the Relevant Period, which attached a Google Spreadsheet that included a label for complaints.

(3). All emails, text messages, and other written or electronic documents or communications received during the Relevant Period by Vivint via the "CEO Promise Page" on Vivint's website, which mentioned allegations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull.

(4). All documents, including but not limited to meeting notes or meeting minutes, memorializing any in-person meetings or telephone calls occurring during the Relevant Period where Vivint's Senior Management discussed or mentioned allegations or investigations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull.

(5). All emails, text messages, and other written or electronic documents or communications sent or received by Vivint's Senior Management during the Relevant Period that can be identified by the following Boolean search terms
    a. "Impermissible pull";
    b. "Impermissible credit pull";
    c. "credit check";
    d. "misrepresent!" and "credit";
    e. "misrepresent!" and "consent!";
    f. "misrepresent!" and "consumer report";
    g. "misrepresent!" and "credit report";
    h. "misrepresent!" and "CAF";
    i. "misrepresent!" and "Credit Authorization Form";
    j. "misrepresent!" and "PCCF";
    k. "misrepresent!" and "Prospective Consumer Consent Form";
    l. "fraud!" and "credit";
    m. "fraud!" and "consent!";
    n. "fraud!" and "consumer report";
    o. "fraud!" and "credit report";
    p. "fraud!" and "CAF";
    q. "fraud!" and "Credit Authorization Form";
    r. "fraud!" and "PCCF";
    s. "fraud!" and "Prospective Consumer Consent Form";
    t. "complain!" and "credit";
    u. "complain!" and "consent";
    v. "complain!" and "consumer report";
    w. "complain!" and "credit report";
    x. "complain!" and "CAF";
    y. "complain!" and "Credit Authorization Form";
    z. "complain!" and "PCCF";
    aa. "complain!" and "Prospective Consumer Consent Form".

(ECF No. 42-3 at 6–7).

Vivint does not (yet) object to the content of these newly issued requests for production, but rather opposes such based-on Plaintiff exceeding the number of permissible requests for production. (ECF No. 42 at 1 n.1).[3] In anticipation of a future disagreement about the scope of discovery, the Court reminds the parties that Judge Hollander's June 25, 2020 Opinion defines the scope of discovery as limited to the particular wrongful conduct alleged here: wrongfully obtaining a customer's consent to perform a credit pull between September 1, 2016 and September 5, 2018. (ECF No. 34 at 18–19). Beyond this guidance to the parties, the Court will not further address whether the requested discovery is substantively objectionable at this time and expresses no opinion whether the additional discovery being allowed is properly confined in its scope.

According to Vivint, prior to the pending Motion to Compel, Plaintiff had already served sixty-one requests for production of documents. (ECF No. 43 at 7–8) ("Thus, if permitted by the Court, Plaintiff's additional requests for production would total seventy-one (71) issued by Plaintiff to Vivint Solar.").[4] In addition to exceeding the numerical limitations, Vivint argues Plaintiff's request is improper at this "late stage," given that Plaintiff could have sought this discovery previously. *Id.* at 2, 4.[5]

---

[3] See (ECF No. 43 at 3) ("If the Court is inclined to grant leave to increase the numerical limitations, Vivint Solar with thereafter need to seek Court intervention on this line of discovery given its overly burdensome nature and complete lack of proportionality.").

[4] "In July of 2019, Plaintiff served on Vivint Solar thirty (30) numbered requests for production of documents. Plaintiff's Request No. 1 includes ten (10) subparts seeking documents related to each of Vivint Solar's ten (10) affirmative defenses and Request No. 26 includes twenty-three (23) subparts requesting the documents Vivint Solar relied on in responding to each of Plaintiff's twenty-three (23) numbered interrogatories. Plaintiff additionally served her December 2019 iPad inspection request which this Court addressed in both the Coulson Discovery Order and Hollander Discovery Order. As such, Plaintiff previously served sixty-one (61) requests for production of documents on Vivint Solar prior to filing the Motion and issuing the discovery she seeks via the Motion." (ECF No. 43 at 7).

[5] When Judge Hollander extended the Deadlines for Document Production, Discovery, and Dispositive Pretrial Motions she did not impose any specific restrictions on the parties' ability to serve additional discovery requests. (ECF No. 40). This Court will not impose limitations that Judge Hollander did not and declines to reject Plaintiff's motion on the basis that it is untimely.

5

Local Rule 104.1 states "[u]nless otherwise ordered by the Court, or agreed upon by the parties, no party shall serve upon any other party, at one (1) time or cumulatively, more than thirty (30) requests for production, or more than thirty (30) requests for admission (other than requests propounded for the purpose of establishing the authenticity of documents or the fact that documents constitute business records), including all parts and sub-parts."  Plaintiffs may seek leave of the court to issue a limited number of additional requests for production if Plaintiffs believe there are remaining documents to which they have not had access.  *Alvarez v. Johns Hopkins Univ.*, 2019 WL 2210644, at *8 (D. Md. May 21, 2019).

The circumstances here indicate that Plaintiff's requests for production are premised on her reasonable belief that there are documents to which she has not had access.  Plaintiff's belief is founded on allegations contained within the Class Action Complaint in the Vivint Securities Fraud Case, which was filed on June 29, 2020.  (ECF No. 42-2).  According to Plaintiff, this Complaint reveals "Vivint has to produce 'several dozen' email communications with and among its senior corporate management, including its CEO David Bywater" regarding fraudulent sales practices.  (ECF No. 42 at 2,8).  Contrary to Defendant's contentions, this additional information does represent a change in circumstances sufficient to justify this (limited) expansion of discovery (although the parties are again reminded that discovery as to all "fraudulent sales practices" is more expansive than Judge Hollander's order limiting discovery to the alleged sales practice of wrongfully obtaining consent to a credit pull).

Further, Plaintiff timely objected to my prior discovery order (ECF Nos. 28 and 29), an objection with which Judge Hollander agreed in part as set forth in her June 25, 2020 Order.  From the Court's standpoint, given that Plaintiff could not know the extent to which her objections would be successful until Judge Hollander's ruling (ECF No. 34), which meaningfully expanded the

6

scope of discovery, she could not reasonably have been expected to propound the additional discovery requests at an earlier point, the majority of which follow from that ruling.

Plaintiff's requests are probative of Vivint's notice of the alleged pattern and practice of improper credit pulls based on improper consent, a position that Judge Hollander's ruling affirms.[6] As described in-detail in Judge Hollander's Order, the state of mind of the Defendant is a critical component of Plaintiff's FCRA claim. These additional interrogatories seek further discovery on that issue, and both the securities complaint and Judge Hollander's Order represent sufficient changes in circumstance to justify them.[7] Accordingly, Plaintiff's request for leave of Court to propound five additional requests for production of documents is GRANTED.

B. *Additional Interrogatories Regarding Modes of Communication*

Plaintiff has propounded three additional interrogatories pertaining to communications that occurred among Vivint's Senior Management. (ECF No. 42 at 10). According to Defendant, to date Plaintiff has served twenty-three (23) interrogatories (including subparts) on Vivint Solar. (ECF No. 43 at 7). The Federal Rules of Civil Procedure permit a party to serve up to twenty-five interrogatories, unless limited by order or local rule. *Capacchione v. Charlotte-Mecklenburg Sch.*, 182 F.R.D. 486, 492 (W.D.N.C. 1998) (citing FRCP 26(b)(2), 33(a)). A court may permit a party to serve additional interrogatories to the extent such discovery is consistent with Rule 26(b)(1) and

---

[6] To assert a claim for improper acquisition of a credit report under § 1681b(f), a plaintiff must allege: "(1) there was a consumer report; (2) obtained or used by the defendant; (3) without a permissible purpose as defined under § 1681b(a)(1)-(6); and (4) the defendant acted with the specified mental state." *Alston v. Freedom Plus/Cross River*, 2018 WL 770384, at *4 (D. Md. Feb. 7, 2018). Regarding the defendant's mental state, the plaintiff must plausibly allege that the defendant either negligently or willfully violated the FCRA. *See* 15 U.S.C. § 1681o (negligent violation); 15 U.S.C. § 1681n(a)(1)-(2) (willful violation).

[7] As mentioned above, the Court leaves for another day the substantive issue of whether the discovery, as worded, is objectionable as overly-broad and should be more narrowly tailored to focus on corporate notice of complaints specific to wrongfully obtained consent as allegedly occurred here.

(2), specifically that it is not unreasonable, unnecessary, or unduly burdensome. *Id.* Leave of court is required so that the court may examine the circumstances before the parties propound an unreasonable number of interrogatories. *Id.*

Plaintiff's three additional interrogatories "seek information regarding the modes of communication used by Vivint's Senior Management and other relevant Vivint employees." (ECF No. 42 at 10–11). As this Court has determined that the information sought within the requests for production are appropriate, particularly to establish willfulness and knowledge. It follows that Plaintiff is entitled to know how such communications occurred (*i.e.*, the platform and/or device utilized, and the individuals involved). Accordingly, Plaintiff's request to propound three additional interrogatories is GRANTED.

C. *Interrogatory Number 14 – Identification of Other Salespersons in Maryland*

On February 6, 2020, I issued a Memorandum Opinion and Order granting in part and denying in part Plaintiff's Motion to Compel. (ECF No. 28). Therein, I considered Plaintiff's request to compel Vivint to provide an answer to interrogatory number fourteen (14), which requested the identity, and a photograph, of supervisors and other salespersons who solicited work in the same area as Bret Sears. (ECF No. 28 at 8).[8] In denying this request, I noted that Vivint had already disclosed the names Mr. Sears' supervisors; produced Sears' personnel file and photograph; and also produced those of supervisors Cook and Agudelo. (ECF No. 19-2 at 10). I deemed Vivint's response sufficient at that juncture, as "the mere possibility that other employees might contradict Mr. Sears or his managers, without more, does not justify ordering a more

---

[8] Interrogatory Number 14 stated "[w]ith respect to the salesperson alleged to have solicited Plaintiff, identify the District manager to whom that salesperson reports, as well as all other salespersons who work (or worked) in the same district as that salesperson." (ECF No. 42 at 12 n.15).

8

expansive answer." (ECF No. 28 at 8).  However, I qualified this ruling and said that if "discovery uncovers information that would specifically call into question the veracity of such testimony, the Court might reconsider a narrowed version of this request to include one or more of Mr. Sears' immediate co-workers at the time of his interaction with Plaintiff." *Id.*

As to Plaintiff's demand that Vivint identify other Vivint employees, Judge Hollander said:

> I found no error in Judge Coulson's decision that plaintiff was not entitled to this discovery.  Plaintiff contends that the testimony of other salespersons regarding 'deceptive sales pitch[es]' could establish Vivint's willfulness.  However, as Judge Coulson observed, Vivint has already provided Ms. Shackleford with the names and images of the district managers to whom Mr. Sears reported. (ECF No. 28 at 4).  Yet, there is no indication that plaintiff has deposed these individuals or that their testimony contradicted Mr. Sears' testimony regarding his training, instructions, and sales practices.  Further, Judge Coulson did not definitively close the door on this kind of discovery, instead ruling that he 'might reconsider a narrowed version of this request' if plaintiff unearthed discovery that 'call[ed] into question the veracity of' the testimony of Mr. Sears or his managers.  *Id.*  Thus, I find no clear error in Judge Coulson's ruling denying Ms. Shackleford's request regarding the identities of Vivint employees.

(ECF No. 34 at 19).

Plaintiff argues that she has unearthed the very discovery that calls into question the veracity of Mr. Sear's testimony. (ECF No. 42 at 11).  Plaintiff directs the Court to the "allegations in the Vivint Securities Fraud case that specifically call out Maryland as a cesspool for fraudulent sales practices." *Id*.  Plaintiff references claims of a District Manager who worked in Maryland and Virginia from April 2017 to August 2018.  This Manager said, "Vivint employees used a number of fraudulent and unethical sales tactics.  A lot of [sales staff] would zoom in on the signature so [customers] couldn't read the documents they were signing, and they would say, Hey, press this button." *Id*.  An ex-Vivint employee (who worked in Maryland) stated "dozens[] of sales staff engaged in fraudulent or unethical sales practices, estimating that about one-third of the sales staff in [his] region used a fraudulent or unethical sales practice at least once, and that it often came up in office conversations." *Id*.  This additional information clearly contradicts the testimony

of Bret Sears and warrants Vivint providing an answer to interrogatory number fourteen. Plaintiff's request to compel an answer to interrogatory number fourteen is GRANTED.

D. *Discovery on the Issue of Spoliation*

Plaintiff seeks to propound three additional interrogatories and four[9] requests for production pertaining to the issue of spoliation. (ECF No. 42 at 13). As relevant to the pending request, on December 19, 2019, Plaintiff served a Rule 34 Inspection Notice on Vivint. (ECF No. 23 at 2). The subject of this Notice was for Plaintiff to inspect an iPad with Vivint's credit consent form ("CCF") version 4.0 (*i.e.,* the version in use at the time of Mr. Sears' interaction with Plaintiff). *Id*. Plaintiff premised her request on Vivint's claim that it utilized this version of the software to obtain Plaintiff's consent and because disputed facts remain as to what, if anything, Plaintiff saw when presented with the iPad that day by Mr. Sears. Vivint objected to this request, arguing: (1) it neither possessed an iPad with version 4.0, nor could it reasonably re-create one without risking disruption of its business; and (2) there is no meaningful difference between versions 4.0 and 4.1 with respect to customer consent. (ECF No. 27).

In denying Plaintiff's Motion, I recognized "whether the differences between version 4.0 and 4.1 are material, relative to Plaintiff's experience of the consent process as it then existed, are clearly a legitimate area of inquiry." (ECF No. 28 at 10). However, I found that Vivint's response to Plaintiff's inquiry was sufficient. Vivint's corporate designee testified during her deposition that there were no meaningful differences between the two versions of the consent form. *Id*. Vivint also produced a declaration from Aaron Crosby, its IT Program Manager, that similarly affirmed that there was no meaningful difference between the two versions of the software. *Id*. Thus, while

---

[9] Plaintiff says that only three requests for production were propounded. However, four requests for production are present here. (ECF No. 42 at 13).

Plaintiff "of course, remains free to argue that Mr. Sears did something to mislead her or to obscure the consent language" or "somehow manipulated its functionality," I determined she was not entitled to disrupt Vivint's business operations by forcing it to recreate Version 4.0 of the credit consent form. *Id.* at 11.

With respect to this software change, Plaintiff made a passing request for spoliation sanctions. Spoliation occurs when a party destroys or materially alters evidence or fails to preserve property that could be used as evidence in a pending or reasonably foreseeable case. See *Boone v. Everett*, 751 Fed. App'x 400, 401 (4th Cir. 2019) (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). Federal courts derive the power to sanction spoliation from two sources of authority: Fed. R. Civ. P. 37(e) and its inherent authority to redress conduct which abuses the judicial process. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010). Based on Federal Rule of Civil Procedure 37(e), in order to obtain sanctions for the spoliation of ESI the moving party must satisfy four threshold elements: "(1) ESI should have been preserved; (2) ESI was lost; (3) the loss was due to a party's failure to take reasonable steps to preserve the ESI; and (4) the ESI cannot be restored or replaced through additional discovery." *Steves & Sons Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

Without a detailed record before the Court, this Court could not pass on the issue of spoliation. In declining Plaintiff's request for spoliation sanctions, I noted that the admissibility or significance at trial as to the unavailability of Version 4.0, other than in paper form, was a matter left to the sound discretion of the trial judge. (ECF No. 28 at 12). In evaluating Plaintiff's Motion to Reconsider, Judge Hollander found that my decision to "refrain from resolving the issue of spoliation could hardly be more correct." (ECF No. 34 at 21). Judge Hollander noted "[a]t this

11

juncture, where discovery is not complete, it would be premature to have ruled on plaintiff's request for sanctions." *Id.* at 24.

On this basis, Plaintiff now propounds three additional interrogatories to delve deeper into the spoliation issue. (ECF No. 42-3 at 5–6). Plaintiff's interrogatories request that Vivint:

> (18). Identify all individuals who played a role in designing, creating, implementing, removing, and deleting Version 4.0 of the credit consent form, and in so doing, briefly explain their role.
>
> (19). Identify all individuals who played a role in designing, creating, implementing, removing, and deleting Version 4.1 of the credit consent form, and in so doing, briefly explain their role.
>
> (20). State as precisely as possible the current location of credit consent form Version 4.0 and the associated metadata.

(ECF No. 42 at 13).

Plaintiff also propounds four requests for production in reference to same. Plaintiff's requests include:

> (6). Your policies for the retention or preservation of electronically stored information and documents.
>
> (7). All emails, text messages, and other written or electronic communications relating to Vivint's decision to change the credit consent form from Version 4.0 to version 4.1.
>
> (8). All emails, text messages, and other written or electronic communications relating to Vivint's decision to temporarily reintroduce Version 4.0 of the credit consent form into the Document Library on April 30, 2020, and Vivint's subsequent decision to remove Version 4.0 from the Document Library.
>
> (9). All metadata pertaining to credit consent form 4.0.

*Id.*

Plaintiff contends this additional discovery will assist her in proving, and Judge Hollander in evaluating, the extent/existence of Vivint's spoliation. In considering a motion for spoliation sanctions, a court must assess when the duty to preserve began, whether the accused party complied with its duty, the degree of the accused party's culpability, the relevance of the destroyed

12

evidence, and any prejudice suffered by the party seeking the evidence.  See *Goodman v. Praxair Servs. Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009).  Often, collecting this evidence will require a hearing.  (ECF No. 34 at 24) (citing *Goodman*).  Specifically, "in deciding a spoliation motion, the court may order that additional discovery take place either to develop facts needed to rule on the motion or to afford the party deprived of relevant evidence an additional opportunity to develop it from other sources."  *Goodman*, 632 F. Supp. 2d at 508.  The least disruptive time to undertake this is *during* the discovery phase, not after it has closed.  *Id.* (emphasis in original).

As discovery in this case is ongoing, now is the appropriate time to undertake additional discovery regarding potential spoliation.  The limited burden imposed by these seven discovery requests is outweighed by the resources (of the Court and of the parties) that would be necessitated to reopen discovery farther down the road.

Moreover, Vivint's actions during the discovery phase necessitated the need for this additional discovery.  On June 18, 2020 Vivint disclosed to the Court that because door-to-door sales had been suspended in the vast majority of jurisdictions, in light of the COVID-19 pandemic, it temporarily reintroduced Version 4.0 into the Document Library on April 30, 2020, and created a screenshot video demonstrating how Version 4.0 would appear and function on a Vivint salesperson's iPad.  (ECF No. 32 at 2–3).  Although Vivint removed Version 4.0 from the Document Library the next day, it avers that it transmitted the screen shots to Plaintiff.  *Id.*  (ECF No. 34 at 21 n.2).

This additional information indicates that Vivint had the ability and capability to reintroduce Version 4.0, but did so without informing Plaintiff of this opportunity and providing her with the requested opportunity to review the software, herself.  Given Plaintiff's previous request to review this software, and Vivint's contention that it no longer existed or could be

reasonably created without undue disruption, it appears that Vivint was on notice of its duty to preserve this ESI (to the extent there was something to preserve). Plaintiff's interrogatories lend to this issue, and to the question of whether Vivint complied with this potential duty on April 30, 2020 when Version 4.0 of the software was apparently revived and available. Communications regarding Vivint's decision to reinstate the software clearly go to whether the ESI was lost due to Vivint's failure to take reasonable steps to preserve the ESI, and its related culpability. Whether the information garnered from this additional discovery will result in spoliation sanctions, or prove admissible at trial, is, again, a question for Judge Hollander. Nonetheless, at this time, the Court will GRANT Plaintiff's request to propound the three additional interrogatories and four requests for production.

### III. CONCLUSION

For the reasons outlined above, Plaintiff's Motion (ECF No. 42) is GRANTED. As noted above, the Court's Order here answers only the procedural questions of whether Plaintiff may propound the requested discovery. In so ruling, the Court is explicitly not addressing whether the permitted discovery is in substantive conformity with Judge Hollander's prior Order. The parties' current discovery deadline is September 15, 2020. In granting Plaintiff's Motion, the Court recognizes that the current deadline may prove unworkable. Accordingly, the parties should confer and jointly propose an amended discovery deadline and dispositive motions deadline for the Court's consideration. Further, if any discovery dispute remain, Counsel are to review this Court's previously-ordered discovery dispute procedure (ECF No. 26) and act accordingly.

Date: September 1, 2020                                               /s/

                                                     J. Mark Coulson
                                                     United States Magistrate Judge