IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DENISE SHACKLEFORD,** | * | |
| **Plaintiff,** | * | |
| v. | * | Civil Action No.   ELH-19-954 |
| **VIVINT SOLAR DEVELOPER, LLC,** | * | |
| **Defendant.** | * | |

\*\*\*\*\*\*

**MEMORANDUM OPINION AND ORDER**

This memorandum opinion and order concerns the parties' dispute over plaintiff's supplemental discovery requests. The parties briefed the issues informally, ECF 48, 49 and 50. On October 20, 2020, the Court held a conference call regarding the disputed issues.[1]

The pending dispute follows prior discovery disputes. In her June 25, 2020, Memorandum Opinion, Judge Hollander defined the scope of discovery in this case. ECF 34. Judge Hollander limited discovery of consumer complaints to those "filed between September 1, 2016 and September 5, 2018, alleging that Vivint salespersons misrepresented the purpose of the credit consent form[.]" June 25, 2020 Order 1, ECF 35; *see also* June 25, 2020 Mem. Op. 18–19, ECF 34. Judge Hollander found other similar consumer complaints were relevant to prove the corporation's willfulness under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681n. June 25, 2020 Mem. Op. 18. To prove willfulness, the plaintiff need not show malice or evil motive but must "only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer." *Id.* at 17 (quoting *Ausherman v. Bank of Am.*

---

[1] On September 8, 2020, this case was referred to me for discovery and related scheduling matters pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302.

*Corp.*, 352 F.3d 896, 900 (4th Cir. 2003) (quoting *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001))). In light of *Dalton*, Judge Hollander found that other similar consumer complaints were relevant to the claims in the case because plaintiff "challenges a corporate process—how Vivint salespersons obtain consumers' authorization to access their credit." *Id.* at 18. Given the allegations of an unlawful corporate process, Judge Hollander found that "Ms. Shackelford is entitled to consumer complaints to the extent that they are narrowly tailored to the facts and needs of this case." *Id.* Judge Coulson recently confirmed that Judge Hollander's memorandum opinion "defines the scope of discovery as limited to the particular wrongful conduct alleged here: wrongfully obtaining a customer's consent to perform a credit pull between September 1, 2016 and September 5, 2018." Sept. 1, 2020 Order 5, ECF 44. With these rulings as guidance, the Court addresses the current dispute over plaintiff's supplemental discovery.

Plaintiff's supplemental discovery requests were filed as exhibits to plaintiff's July 29, 2020 motion to seek additional discovery and compel an answer to a previously-served interrogatory, ECF 42. They are supplemental interrogatories 15 through 20 and supplemental requests for the production of documents 1 through 9. *See* Pl.'s Supp. Doc. Requests, ECF 42-3; Pl.'s Supp. Interrogs., ECF 42-4. Defendant has objected to all of plaintiff's supplemental discovery. After a meet and confer, the parties narrowed the issues to the following: (1) corporate communications and (2) spoliation. The latter issue has been resolved. Defendant has offered to make available for inspection on an iPad Version 4.0 of the credit consent form that was used when plaintiff interacted with defendant's sales representative on September 5, 2018. Defendant shall make the software available for inspection for a sufficient period of time to allow plaintiff ample opportunity to review it. Because the parties have resolved their dispute about Version 4.0 of the credit consent form, plaintiff's request to compel responses to interrogatories 18–20 and requests

2

for production 6–9, all of which seek information relating to Version 4.0 and alleged spoliation, is denied as moot.

The remaining discovery requests—interrogatories 15 through 17 and requests for production 1 through 5—seek information about "Vivint's Senior Management" and Vivint's corporate communications concerning "allegations or investigations of a Vivint salesperson misrepresenting the purpose of a form in furtherance of a credit pull." Pl.'s Supp. Doc. Requests; *see* Pl.'s Supp. Interrogs.

## I. Scope of Discovery

Pursuant to Rule 26, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The party objecting to a discovery request "has the burden of 'clarify[ing] and explain[ing] precisely why its objections are proper given the broad and liberal construction of the federal discovery rules.'" *Gross v. Morgan State Univ.*, No. JKB-17-448, 2018 WL 9880053, at *5 (D. Md. Feb. 9, 2018) (quoting *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 411 (D. Md. 2005)). That is, the objecting party has "to establish that the information is not relevant, or that the discovery request should be denied." *Id.* (quoting *Hake v. Carroll Cty.*, WDQ-13-1312, 2014 WL 3974173, at *5 (D. Md. Aug. 14, 2014) (citation omitted)). Significantly, "[w]hat is discoverable is limited by the requirement of '[p]roportionality[,] [which] requires courts to consider, among other things, whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *In re Verizon Wireless*, No. TDC-19-1744, 2019 WL 4415538, at *4 (D. Md. Sept. 16, 2019) (quoting *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188–89 (4th Cir. 2019)). The Court also considers "the importance of the issues at stake in the action, the amount in controversy,

the parties' relative access to relevant information, the parties' resources, [and] the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1).

## II.   Corporate Communications

Plaintiff served the following interrogatories requesting information that identifies "Vivint's Senior Management" and the electronic platforms that Vivint's Senior Management used to communicate regarding work.

> 15. Identify each individual who served in Vivint's Senior Management, during the Relevant Period, and in doing so, also state:
>
> a. The job title and job description for each role held while working for Vivint;
> b. the email address(es) used; and
> c. the duration of each such role.
>
> 16. Identify all audio, video, and text messaging platforms used by the following individuals during the Relevant Period to send or receive work-related communications: David Bywater, Dana Russell, Jeremy Sabin, Tyler Anderson, Chance Allred, Paul Dickson, Jed Wintle, Bret Sears, Colt Reid, and Thomas Plagemann.
>
> 17. Identify all audio, video, and text messaging platforms used by Vivint's Senior Management during the Relevant Period to send or receive work-related communications, excluding the individuals already identified in Interrogatory 16.

Plaintiff also served the following requests for the production of documents relating to the communications of Vivint's Senior Management.

> 1. All emails, text messages, and other written or electronic communications sent or received by Vivint's Senior Management during the Relevant Period discussing or mentioning allegations or investigations of a Vivint salesperson misrepresenting the purpose of a form in furtherance of a credit pull.
>
> 2. All emails, text messages, and other written or electronic documents or communications sent to David Bywater's email address(es)v [sic] during the Relevant Period, which attached a Google Spreadsheet that included a label for complaints.
>
> 3. All emails, text messages, and other written or electronic documents or communications received during the Relevant Period by Vivint via the "CEO Promise Page" on Vivint's website, which mentioned allegations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull.

4

4. All documents, including but not limited to meeting notes or meeting minutes, memorializing any in-person meetings or telephone calls occurring during the Relevant Period where Vivint's Senior Management discussed or mentioned allegations or investigations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull.

5. All emails, text messages, and other written or electronic documents or communications sent or received by Vivint's Senior Management during the Relevant Period that can be identified by the following Boolean search terms:

a. "Impermissible pull";
b. "Impermissible credit pull";
c. "credit check";
d. "misrepresent!" and "credit";
e. "misrepresent!" and "consent!";
f. "misrepresent!" and "consumer report";
g. "misrepresent!" and "credit report";
h. "misrepresent!" and "CAF";
i. "misrepresent!" and "Credit Authorization Form";
j. "misrepresent!" and "PCCF";
k. "misrepresent!" and "Prospective Consumer Consent Form";
l. "fraud!" and "credit";
m. "fraud!" and "consent!";
n. "fraud!" and "consumer report";
o. "fraud!" and "credit report";
p. "fraud!" and "CAF";
q. "fraud!" and "Credit Authorization Form";
r. "fraud!" and "PCCF";
s. "fraud!" and "Prospective Consumer Consent Form";
t. "complain!" and "credit";
u. "complain!" and "consent";
v. "complain!" and "consumer report";
w. "complain!" and "credit report";
x. "complain!" and "CAF";
y. "complain!" and "Credit Authorization Form";
z. "complain!" and "PCCF";
aa. "complain!" and "Prospective Consumer Consent Form".

Plaintiff contends the requested information regarding corporate communications is relevant to Vivint's "notice (and deliberate disregard) of a corporate-wide pattern of fraudulent credit pull practices" that violated the FCRA. Pl.'s Ltr. 3, ECF 50. Defendant objects to the requests on relevance and proportionality grounds but has offered compromise positions, many of which the Court adopts. Defendant reiterates this is a single-plaintiff lawsuit brought against

5

Vivint based on plaintiff's one-time interaction with defendant's salesperson in which he obtained her consumer credit report under false pretenses. Defendant reminds the Court that plaintiff is not claiming out-of-pocket damages and insists plaintiff's credit score has improved since Vivint's alleged wrongdoing.

The Court first addresses the substance of the document requests. Document request 1 seeks corporate communications "discussing or mentioning allegations or investigations of a Vivint salesperson misrepresenting the purpose of form in furtherance of a credit pull." This information is relevant to establish the company's state of mind and whether it acted willfully under the FCRA. The request does not mirror the language Judge Hollander used to limit the scope of discovery, but it seems appropriately tailored to her ruling. However, to ensure the request aligns with the Court-imposed limitation, the Court will order the production of documents discussing or mentioning allegations or investigations of a Vivint salesperson wrongfully obtaining consent to perform credit pulls. Document request 2 seeks communications "sent to David Bywater's email address(es)v [sic] . . . which attached a Google Spreadsheet that included a label for complaints." This request is sufficiently narrow and targeted to obtain information relevant to the CEO's notice and knowledge of complaints against the company, but the Court will only compel production of the documents to the extent the complaints in the Google Spreadsheet relate to allegations that a Vivint salesperson wrongfully obtained consent to perform credit pulls. Document request 3 seeks documents "received during the Relevant Period by Vivint via the 'CEO Promise Page' on Vivint's website, which mentioned allegations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull." Like document request 1, this request seems consistent with Judge Hollander's ruling, but for the sake of clarity, the Court will order the production of documents received by Vivint via the "CEO Promise Page" on Vivint's

6

website, which mentioned allegations of a Vivint salesperson wrongfully obtaining consent to perform credit pulls.  Subject to the limitations addressed herein, defendant must produce documents responsive to requests for production 1, 2 and 3.

Request for production 4 seeks "[a]ll documents, including but not limited to meeting notes or meeting minutes, memorializing any in-person meetings or telephone calls . . . where Vivint's Senior Management discussed or mentioned allegations or investigations of Vivint salespersons misrepresenting the purpose of a form in furtherance of a credit pull." Pl.'s Supp. Doc. Requests. Defendant objects because "all documents" is overbroad and not proportional to the needs of the case.  The Court agrees.  Subject to the additional limitations set forth below, the request will be limited to meeting notes or meeting minutes, whether retained in hard copy or electronically, that memorialize any in-person meetings or telephone calls where Vivint's Senior Management discussed or mentioned allegations or investigations of a Vivint salesperson wrongfully obtaining consent to perform credit pulls.

Request for production 5 is overbroad and cumulative of requests 1, 2, and 3.  In request 5, plaintiff seeks documents that "can be identified by" 27 Boolean search terms.  These search terms appear to be aimed at finding documents responsive to requests 1, 2, and 3.  Indeed, plaintiff essentially admitted as much during the conference call.  For this reason, request 5 is cumulative of the first three documents requests and unnecessary.  In addition to being cumulative, the request is overbroad, because some of the Boolean searches would yield irrelevant documents.  Insofar as plaintiff was attempting to help defendant search for documents responsive to the other three requests, a document request that requires certain Boolean searches is not the appropriate method. Moreover, as the defendant stated on the call, the proposed search terms arguably would yield a batch of emails that do not include all documents responsive to requests 1, 2, and 3.  The Court is

7

confident defendant is aware of its obligation to search for and produce all responsive documents. Therefore, plaintiff's request to compel the production of documents responsive to request number 5 is denied.

The Court next addresses the relevant time period for these requests. Plaintiff defined Relevant Period in its supplemental discovery as "on or before September 5, 2018." Pl.'s Supp. Doc. Requests; Pl.'s Supp. Interrogs. This period does not square with Judge Hollander's ruling. The Court limited discovery of similar consumer complaints to complaints filed between September 1, 2016 and September 5, 2018. When asked why plaintiff was entitled to corporate communications before the Court-imposed cut off of September 1, 2016, plaintiff claimed they are relevant to show Vivint was on notice of its employees' deceptive practices. Plaintiff pointed to a securities fraud and shareholder derivative complaint filed against Vivint on June 29, 2020 in the Eastern District of New York. *In re Vivint Solar, Inc. Sec. Litig.*, No. 19-cv-5777 (E.D.N.Y.). Aside from the filing of the lawsuit, plaintiff did not identify how a securities class action against Vivint in another jurisdiction expands the time frame of relevant, proportional discovery in this case. Further, the allegations in the class action suit that plaintiff cites as relevant to this case occurred in 2017 and 2018. Those allegations involve an ex-Vivint district manager who worked in Maryland and Virginia from April 2017 to August 2018 and claims that Vivint employees "used a number of fraudulent and unethical sales tactics." Pl.'s Ltr. 2. That time period overlaps with the two-year period Judge Hollander found relevant and proportional in this case. Therefore, even if the allegations in the class action securities lawsuit are somehow relevant to this case, they do not support an expansion of the time period Judge Hollander found appropriate here.

The Court next addresses the definition of "Vivint's Senior Management." Plaintiff defines "Vivint's Senior Management" to include "Vivint's corporate officers, chief executives, directors,

presidents, and vice presidents, senior managers, and district managers." Pl.'s Supp. Doc. Requests; Pl.'s Supp. Interrogs. Defendant objects to the definition as vague, overbroad, and not proportional to the needs of the case. During the conference call, plaintiff agreed to strike senior managers and district managers from the definition and amend her request to include regional sales directors. It appears those changes would limit significantly the scope of the request. Defendant asks the Court to limit "Vivint's Senior Management" to Vivint's Chief Executive Officer David Bywater and its Chief Sales Officer Chance Allred. This limitation would be too narrow given plaintiff's allegations that the corporation willfully employed an unlawful corporate-wide process to obtain authorization to access consumers' credit. The corporation's knowledge and state of mind may be discerned from more members of senior management than Mr. Bywater and Mr. Allred. Given plaintiff's entitlement to information relevant to the corporation's state of mind, the Court will define the term "Vivint's Senior Management" as defendant's "C-level executives," a term defense counsel used to describe high-level Vivint executives. The Court understands from defense counsel there are 10 to 20 "C-level executives," and they include a chief executive officer, chief financial officer, chief revenue officer, chief sales officer, and chief operational officer, among others. The term "Vivint's Senior Management" also will include Vivint's regional sales directors who oversee dozens of district managers. According to plaintiff, there are five or six regional directors at any point in time. With this revised definition of "Vivint's Senior Management," the Court has included high-level executives whose knowledge could be imputed to the company and the handful of regional directors who oversee the operations of the district managers and sales associates. This definition accounts for plaintiff's justifiable request for communications that may show Vivint was on notice of, and even encouraged, unauthorized credit

9

pull practices, and it acknowledges the burden that a more expansive definition would place on defendant in this single-plaintiff case.

The Court next considers the types of electronic communications that plaintiff has requested. Requests for production 1, 2, and 3 seek "[a]ll emails, text messages, and other written or electronic communications . . . ." These requests are overbroad. The Court will not order the production of text messages. Vivint represents that it does not issue company cell phones and that its employees may use their personal cell phones for work-related matters. Plaintiff acknowledges that personal cell phones are not in Vivint's possession or custody but insists that work-related text messages on Vivint employees' personal cell phones are in Vivint's *control*. According to plaintiff, sales associate Brent Sears's employment agreement granted Vivint the authority to demand the return of confidential information, which plaintiff contends would include confidential information on his personal cell phone. As support for this argument, plaintiff cites *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 501–02 (D. Md. 2000) ("It is well established that 'control' under Fed. R. Civ. P. 34 is to be broadly construed so that a party may be obligated to produce documents requested even though it may not actually possess the documents. As long as the party has the legal right or ability to obtain the documents from another source on demand, that party is deemed to have 'control.'" (citation omitted)). Even if *Poole* can be read as expansively as plaintiff suggests, and even if the Court were to follow the expansive reading, the Court is unconvinced that plaintiff has met her burden to establish the text messages are proportional to the needs of the case. *See Bost v. Wexford Health Sources, Inc.*, No. ELH-15-3278, 2020 WL 1890506, at *8 (D. Md. Apr. 15, 2020). If the Court were to order the production of responsive text messages on the personal cell phones of Vivint's Senior Management, the burden and expense for Vivint would be substantial. Vivint would have to ask former and current members of its Senior Management to

allow a Vivint IT person or a third-party vendor access to his or her cell phone in order to search the contents of the phone for responsive text messages. Not only would this be a potential invasion of privacy to which the employees might lodge an objection or seek a protective order, but it would be expensive and time-consuming. And it is unclear whether it would yield any benefit to plaintiff. Indeed, plaintiff, through counsel, stated on the call that she did not know if any responsive text messages existed.[2] To the extent a search of the phones did result in some relevant information, its likely benefit is outweighed by the burden and expense of obtaining it. For these reasons, the Court will not order the production of text messages on the personal cell phones of Vivint employees. The document requests are limited to emails sent or received on Vivint email accounts or other written or electronic communications within Vivint's possession, custody, or control that can be obtained from Vivint's servers or hard drives.

Plaintiff's request to compel a response to Interrogatory 15 is granted, subject to the limitations herein. The name, job title, job duration, job description, and Vivint email address of Vivint's Senior Management is relevant and proportional to the needs of the case. Plaintiff's request to compel responses to Interrogatories 16 and 17 is denied. This order identifies the electronic platforms that will be searched, and as a result, responses to those interrogatories is unnecessary.

Date: <u>October 26, 2020</u>                    /S/
                                                 Deborah L. Boardman
                                                 United States Magistrate Judge

---

[2] Moreover, it is unclear whether any responsive text messages would qualify as confidential information such that Vivint had a right to demand their production under the employment agreement.